UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CAMERON GROUP, LLC and
HINSDALE ROAD GROUP, LLC,

Plaintiffs,

v.

EILERSON DEVELOPMENT CORPORATION,
AMERISURE INSURANCE COMPANY, and
AMERISURE MUTUAL INSURANCE COMPANY,

Defendants-Third Party Plaintiffs,

v.

SELECTIVE INSURANCE GROUP, INC. d/b/a SELECTIVE
INSURANCE COMPANY OF AMERICA, and
C&D LAFACE CONSTRUCTION, INC.,

Third-Party Defendants.

---

**AFFIRMATION OF STEVEN E. PEIPER IN SUPPORT OF SELECTIVE INSURANCE COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

**Civil Action No.: 5:19-cv-00285-LEK-ML**

**STEVEN E. PEIPER**, an attorney licensed to practice in and before this Court, as well as the Courts of the State of New York, affirms the following under penalty of perjury:

1. I am an attorney licensed to practice in the State of New York, and am a Member of the law firm of HURWITZ & FINE, P.C., attorneys for Defendant, SELECTIVE INSURANCE COMPANY OF AMERICA ("Selective"). As such, I am fully familiar with the facts and circumstances of this case.

2. This Affirmation is submitted in support of Third-Party Defendant Selective's Motion for Summary Judgment pursuant to FRCP 56.

**PROCEDURAL HISTORY**

3. On or about December 16, 2018, Cameron Group, LLC ("Cameron"), and Hinsdale Road Group, LLC ("Hinsdale"), commenced a Declaratory Judgment Action in and for the Supreme Court of Onondaga County which, *inter alia*, sought an award of coverage from Amerisure Insurance Company and/or Amerisure Mutual Insurance Company (hereinafter collectively "Amerisure") (*see* Docket No. 2).

4. Amerisure immediately filed removal papers on the basis of diversity jurisdiction, and the matter was transferred to the United States District Court for the Northern District of New York, wherein Amerisure eventually interposed an Answer on March 7, 2019 (*see* Docket No. 5).

5. Eilerson Development Corporation ("EDC") joined issue in the instant lawsuit by the filing of an Answer on March 18, 2019 (*see* Docket No. 7).

6. Amerisure and EDC commenced third-party actions against Selective and C&D Laface Construction, Inc. ("Laface"), by way of separate Complaints both dated June 28, 2019 (*see* Docket Nos. 14 and 15, respectively).

7. Therein, both Amerisure and EDC asserted that EDC was entitled to additional insured status, on a primary basis, under a certain Commercial General Liability policy of insurance Selective issued to Laface. (*Id.*).

8. Amerisure and EDC also sought a declaration that EDC was entitled to additional insured status under a Commercial Umbrella policy that Selective also provided to Laface, and that such coverage also applied before EDC's policies with Amerisure were triggered. (*Id.*).

9. Even though Amerisure and EDC had denied the tender of Cameron, Hinsdale and MTT, their respective Joinder Complaints against Selective further sought declaratory relief providing that Selective's CGL and Umbrella policies, respectively, provided primary, non-contributory coverage for Cameron, Hinsdale and MTT. (*Id.*).

10. Selective and EDC joined issue by service of Answers to both Joinder Complaints on August 21, 2019 (*see* Docket Nos. 26 and 27, respectively).

11. Amerisure and EDC's claims for contractual relief against Laface were discontinued by way of voluntary discontinuance which this Court entered on December 17, 2019 (*see* Docket No. 29).

## DEPOSITION HISTORY

12. On August 17, 2020, Shaun Atkinson provided sworn testimony relative to the incident and the subsequent lawsuit. A true and accurate copy of Mr. Atkinson's deposition transcript is attached hereto and incorporated herein as **Exhibit "A"**.

13. On August 25, 2020, Joseph Goethe, as a representative of Cameron Group, provided sworn testimony relative to the incident involving Mr. Atkinson and the subsequent lawsuit. A true and accurate copy of Mr. Goethe's deposition transcript is attached hereto and incorporated herein as **Exhibit "B"**.

14. On September 24, 2020, Carmena Rachetta, as a representative of Laface, provided sworn testimony relative to the incident involving Mr. Atkinson and the subsequent lawsuit. A true and accurate copy of Ms. Rachetta's deposition transcript is attached hereto and incorporated herein as **Exhibit "C"**.

15. On November 18, 2020, Christopher C. Walsh, as a representative of EDC, provided sworn testimony relative to the incident involving Mr. Atkinson and the subsequent lawsuit. A true and accurate copy of Mr. Walsh's deposition transcript is attached hereto and incorporated herein as **Exhibit "D"**.

## THE UNDERLYING INCIDENT AND UNDERLYING LAWSUIT

16. By way of a Summons and Complaint filed in and for the Supreme Court of the State of New York, Onondaga County, on May 14, 2018, and bearing Index Number 004808, Mr. Atkinson and his wife, Vanessa Atkinson, commenced a lawsuit against Eilerson Development Corporation a/k/a EDC, the Cameron Group, LLC, Movie Tavern Theatres, LLC, and Southern Theatres, LLC.[1] A true and accurate copy of the Underlying Summons and Complaint is attached hereto and incorporated herein as **Exhibit "E"**.

17. Therein, Mr. and Mrs. Atkinson sought damages as a result of the injuries and life disruptions caused by the events of November 5, 2015, pursuant to Labor Law §§ 241(6) and 200, respectively. (*Id.*).

18. Eventually, by way of a Third-Party Action filed in December of 2019, EDC commenced a third-party action seeking contractual indemnification from Laface pursuant to the EDC/Laface Contract. (*Id.*).

## THE RELEVANT INSURANCE CLAIMS

19. On or about June 1, 2018, counsel to EDC in the Underlying Action requested additional insured coverage and contractual indemnification from Laface and Selective Insurance Company of America ("Selective"). A true and accurate copy of the June 1, 2018, letter is attached hereto and incorporated herein as **Exhibit "F"**.

[1] Upon information and belief, Southern Theatres is the parent corporation of MTT.

20. By way of letter dated June 27, 2018, Selective responded to EDC's tender letter and acknowledged that EDC qualified as an additional insured under a certain policy of Commercial General Liability insurance that Selective issued to Laface under policy number S2056307 and having effective dates from December 15, 2014 through December 25, 2015 ("Selective CGL policy"). A true and accurate copy of the June 27, 2018, letter is attached hereto and incorporated herein as **Exhibit "G"**.

21. As part of its June 27, 2018, letter, Selective acknowledged that pursuant to the terms and conditions of the Selective CGL policy at issue, Selective would provide primary coverage to EDC for any loss arising out of the Underlying Incident up to its $1,000,000 policy limit. (*Id.*).

22. Selective further acknowledged that it would defend EDC's interests, and accordingly, requested that the file be transferred to the Lippman O'Connor firm for future handling. (*Id.*).

23. Upon information and belief, by way of letter dated July 2, 2019, The Hanover Insurance Group also sought additional insured coverage for Cameron/Hinsdale from EDC. A true and accurate copy of the July 2, 2019, letter is attached hereto and incorporated herein as **Exhibit "H"**.

24. On or about August 3, 2019, Amerisure Insurance ("Amerisure"), as insurer to EDC, rejected the Cameron/Hinsdale tender on the basis that while EDC qualified as an additional insured under the Amerisure CGL policy, all coverage afforded thereunder was excess of any and all other available insurance. A true and accurate copy of the August 3, 2019, letter is attached hereto and incorporated herein as **Exhibit "I"**.

## SELECTIVE'S COVERAGE DEFENSES

25. With regard to Selective's position, the Answer denies any obligation for Selective to provide additional insured status to Cameron, Hinsdale and/or MTT. (*see* Docket Nos. 26 and 27, respectively).

26. Selective asserted in its Answer that Cameron, Hinsdale and/or MTT were not in privity of contract with Selective's named insured, Laface. (*Id.*).

27. Moreover, because Amerisure and EDC continued to neglect their obligations to Cameron, Hinsdale and MTT, they had no standing to assert claims on each parties' respective behalf. (*Id.*).

28. Finally, Selective denied that the Selective Umbrella Policy, which covered EDC, provided coverage to such an extent that it had an obligation to attach before the exhaustion of the Amerisure CGL policy. (*Id.*).

## THE EDC/LAFACE CONTRACT

29. As part of the Township 5 Project, on September 9, 2015, EDC entered into a subcontract with Laface which provided Laface would "complete all MASONRY, CAST STONE, AND BRICK VENEER work…" A true and accurate copy of the EDC/Laface Contract as identified in depositions is attached hereto and incorporated herein as **Exhibit "J"**.

30. At Article Four of that Contract, the parties agreed:

> 4. INSURANCE
>
> 4.1 The Subcontractor shall procure and maintain at the Subcontractor's own expense, during the entire contract time, Liability Insurance is hereinafter specified as:
>
> ***
>
> c. Commercial General Liability shall be provided for a Combined Single Limit of at least $1,000,000 for

each occurrence, $1,000,000 Personal Injury and Advertising Liability, $2,000,000 Products and Completed Operations aggregate and $2,000,000 general aggregate. The policy shall contain no restrictions from contractual liability and xcu (explosion, collapse and underground). Contractor shall be named as additional insured, per form CG 20 10 1185 or equivalent. Subcontractor shall maintain Products and Completed Operations Insurance and shall name Contractor as additional insured for at least two (2) years from the date of final payment. Subcontractor's insurance shall be primary and non-contributory so that the Contractor' policy will not respond until the limits under the Subcontractor's policy are exhausted.

d. Commercial Umbrella Liability shall be provided for at least $1,000,000 and shall be as broad as the primary General Liability and Automobile.

4.2 Certificates of Insurance, including a copy of the additional insured endorsement, acceptable to Contractor must be provided prior to the Subcontractor commencing any work or ordering any materials. Renewal certificates must be provided no less than 14 days prior to expiration. All Insurance carriers named in the sub contractor's certificate of insurance shall have A.M. rating of A- or better. The Certificates must also contain a provision that coverage afforded under the policies will not be canceled unless at least thirty (30) days prior written notice has been given to Contractor. Contractor shall not make any payment to Subcontractor until proper evidence of Insurance is received. If Subcontractor performs any portion of all of the Work without the required Insurances, Contractor shall deduct the greater of twenty five percent (25%) broken down as follows: 10% for General Liability, 10% for Workers' Compensation, 3% for Automobile Liability and 2% for Umbrella coverage of the Subcontract Sum, or the value of the Insurance premium are solely determined by the Subcontractor's carrier.

(*Id.*).

## THE SELECTIVE CGL POLICY

31. Selective issued a Commercial General Liability policy of insurance to Laface under Policy Number S2056307, having effective dates from December 25, 2014 through December 25, 2015, and providing up to $1,000,000 in coverage per occurrence. The policy also included a $2,000,000 limit for aggregate losses. ("Selective CGL Policy"). A true and accurate Certified Copy of the Selective CGL Policy is attached hereto and incorporated herein as **Exhibit "K"**.

32. In relevant part, at Page 5 of Endorsement CG 72 02 12 11, the Selective CGL policy provides the following Additional Insured Endorsement:

> **Blanket Additional Insureds - As Required By Contract**
>
> Subject to the **Primary and Non-Contributory** provision set forth in this endorsement, **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your ongoing operations, "your product", or premises owned or used by you; however this provision does not include any architects, engineers, or surveyors with respect to any injury or damage arising out of the rendering or failure to render any professional services by or for you, including:
>
> **a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>
> **b.** Supervisory, inspection, architectural or engineering activities.
>
> **2.** Your maintenance, operation or use of equipment, other than aircraft, "auto" or watercraft, rented or leased to you by such person or organization. A person or organization's status as an additional insured under this endorsement ends when their contract, or agreement with you for such

> rented or leased equipment ends. With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the rental agreement or equipment lease expires.
>
> The provisions of this coverage extension do not apply unless the written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage" or "personal and advertising injury".

(*Id*.).

33. Per the explicit policy language, additional insured status is only conferred where Laface agreed in written contract or agreement to provide "such person or organization be added as an additional insured on [this] policy." (*Id.*).

**THE SELECTIVE UMBRELLA POLICY**

34. Selective issued a Commercial Umbrella policy of insurance to Laface under Policy Number S2056307, having effective dates from December 25, 2014 through December 25, 2015, and providing up to $5,000,000 in coverage per occurrence ("Selective Umbrella Policy"). The policy also included a $10,000,000 limit for aggregate losses. A true and accurate Certified Copy of the Selective Umbrella Policy is attached hereto and incorporated herein as part of the previously identified **Exhibit "K"**.

35. At Page 1 of Endorsement CXL 4 04 03, the Selective Umbrella Policy provided the following grant of coverage:

> **SECTION I — COVERAGES A. Insuring Agreement**
>
> **1.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to

> participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" or offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

(see **Exhibit "K"**).

36. The Selective Umbrella Policy extended coverage to Additional Insureds at Page 8 of Endorsement CXL 4 04 03 which provided:

> **SECTION II — WHO IS AN INSURED**
>
> **A.** Except for liability arising out of the ownership, maintenance, or use of "covered autos":
>
> **5.** Any additional insured under any policy of "underlying insurance" will automatically be insured under this insurance
>
> If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "underlying insurance", subject to **Section III — Limits of Insurance.** Additional insured coverage provided by this insurance will not be broader than coverage provided by "underlying insurance".

(*Id.*).

37. Finally, the Selective Umbrella Policy provided the following "Other Insurance" Clause at Page 12 of Endorsement CXL 4 04 13:

> **SECTION IV — CONDITIONS**
>
> **H. Other Insurance**
>
> 1. This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance

specifically written as excess over this Coverage Part.

When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has the duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

2. When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

a. The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

b. The total of all deductible and self-insured amounts under all that other insurance.

(*Id.*).

38. Pursuant to Section II – Who is an Insured, the Selective Umbrella Policy only provides coverage for those entities who qualify as additional insureds on "underlying insurance." (*Id.*).

**<u>THE AMERISURE CGL POLICY</u>**

39. Amerisure issued a Commercial General Liability policy of insurance to EDC under Policy Number CPP20737370601, having effective dates from December 31, 2014 through December 31, 2015, and providing up to $1,000,000 in coverage per occurrence ("Amerisure CGL Policy"). The policy also included a $2,000,000 limit for aggregate losses. A true and accurate Certified Copy of the Amerisure CGL Policy is attached hereto and incorporated herein as **Exhibit "L"**.

40. At Page 12 of Endorsement CG 00 01 04 13, the Amerisure CGL Policy provided the following "other insurance" provision:

**Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.** **Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

**b.** **Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That **is** insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** — Coverage **A** — Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do

> so, but we will be entitled to the insured's rights against all those other insurers.

(*Id.*).

**THE AMERISURE UMBRELLA POLICY**

41. Amerisure issued a Commercial Umbrella policy of insurance to EDC under Policy Number CU 20737380402, having effective dates from December 31, 2014 through December 31, 2015, and providing up to $10,000,000 in coverage per occurrence ("Amerisure Umbrella Policy"). The policy also included a $10,000,000 limit for aggregate losses. A true and accurate copy of the Amerisure Umbrella Policy is incorporated as part of the previously identified **Exhibit "L"**.

42. At Page 12 of Endorsement CG 00 01 04 13, the Amerisure CGL Policy provided the following "other insurance" provision:

> **5. Other Insurance**
>
> **a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.
>
> When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
>
> **b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:
>
> **(1)** The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and
>
> **(2)** The total of all deductible and self-insured amounts under all that other insurance.

43. As demonstrated more fully in defendant Selective's accompanying Rule 56.1 Statement of Facts, Memorandum of Law, and all pleadings and proceedings had before herein, it is submitted that defendant Selective is entitled to a declaration that they have no coverage obligations to Cameron, Hinsdale and Movie Tavern Theatre. In addition, any coverage which may be available to EDC under the Selective Umbrella Policy is excess over any and all available primary insurance available to EDC; including, the Amerisure CGL Policy. Finally, this Court should rule that any excess exposure reaching the Selective Umbrella Policy be ratably shared, by limits, with the Amerisure Umbrella Policy.

**WHEREFORE**, for these reasons, this Court should issue an Order granting the relief requested above, and for all such other and further relief as this Court seems just and proper.

DATED: Buffalo, New York
February 26, 2021

HURWITZ & FINE, P.C.

By ______________________________
Steven E. Peiper, Esq.
*Attorneys for Defendant,*
*SELECTIVE INSURANCE COMPANY OF AMERICA*
1300 Liberty Building
424 Main Street
Buffalo, New York 14202
(716) 849-8900
sep@hurwitzfine.com

TO: Daniel W. Gerber, Esq.
GERBER CIANO KELLY BRADY, LLP
*Attorneys for Defendants,*
*AMERISURE INSURANCE COMPANY*
*and AMERISURE MUTUAL INS. CO.*
350 Main Street, Suite 2400
Buffalo, New York 14202

Stephen A. Davoli, Esq.
SUGARMAN LAW FIRM, LLP
*Attorneys for Plaintiffs,*
*CAMERON GROUP, LLC*
*and HINSDALE ROAD GROUP, LLC*
211 West Jefferson Street
Syracuse, New York 13202

Johan A. Obregon, Esq.
CALLAHAN & FUSCO, LLC
*Attorneys for Defendant,*
*EILERSON DEVELOPMENT CORPORATION*
40 Exchange Place, 18th Floor
New York, New York 10005