EXHIBIT J

# SUBCONTRACT AGREEMENT

| | | | |
|---|---|---|---|
| **Contractor:** | EDC<br>1660 Huguenot Road<br>Midlothian, VA 23113<br>(804) 897-0900<br>FAX: (804) 897-0901 | **SUBCONTRACTOR:**<br>Address:<br><br>Phone:<br>Fax:<br>Cell:<br>Attn:<br>E-Mail:<br>*Federal I. D. #:* | **C & D LAFACE CONSTRUCTION, INC.**<br>3721 New Court Avenue<br>Syracuse, NY 13206<br>(315) 471-6964<br>(315) 471-3405<br>(315) 952-3797<br>Giovanni LaFace<br>giolaface@cdlaface.com |
| **Project Name and Address:** | **Movie Tavern<br>Township 5 – Phase Two<br>Town of Camillus<br>Onondago Co., New York** | | |
| **EDC Contract #:** | 15026.4100 | **Contract Date:** | September 9, 2015 |
| **Cost Code:** | 4-100 | **EDC Job #:** | 15026 |

**SCOPE OF WORK:** Furnish all materials, labor, equipment, tools, appliances, permits and everything necessary to complete all **MASONRY, CAST STONE, AND BRICK VENEER** work in accordance with the plans, specifications and all applicable code *requirements*. This Subcontract shall include, but is not necessarily limited to the following:

1. Furnish and install all CMU, Cast Stone, and Brick Veneer per the contract documents including but not limited to all horizontal *reinforcing, mortar, sand, grout*, bond beams, wall ties, thru-wall flashing, flashing, Dur-wall, control joints (with rubber) ~~sealant~~, masonry ties, vents, cavity drainage, galvanized masonry anchors, weeps, ~~metal lath, building felt, waterstop, reglets,~~ and masonry cleaner. CR / LW
2. *Includes all masonry associated with the trash enclosure.*
3. ~~Includes providing CMU bond beams at all openings per item #27 of Addendum #1 questions.~~ installing block lintel for openings under 8' will install steel lintel supplied by GC CR / LW
4. Does not include any insulation inserts.
5. Includes installing in masonry *all items provided by others* to include but not limited to all rebar, steel embeds, plates, ~~anchor bolts,~~ angles, lintels, bent plates, jambs, and ~~door frames~~. will set anchor bolts at the top of the wall. anchor bolts by GC, will grouting door frames CR / LW
6. Includes coordination with other trades to allow for thru wall penetrations, and in wall rough-in as may be required.
7. Includes furnishing and installing *all adequate temporary masonry bracing required per* published standards until permanent structural braces are in place. concrete weights(deadman) or concrete to support the bracing and bracing by others
8. Includes providing all equipment, tools, and scaffolding required for a safe installation per published OSHA standards.
9. Grout station to be kept clean and safe at all times and includes *storm water pollution prevention barrier around* station if required.
10. Provide all materials per specifications, no substitutions.
11. Provide all layout for this scope of work once building corners and bench mark *has been established*.
12. Pay all permits, taxes, and licensing fees associated with this work. Tax on material is not included.
13. Provide all required submittals in accordance with contract documents.
14. ~~Multiple mobilizations, if required, are included.~~ CR / LW
15. Coordination meetings are required prior to installation of materials with EDC Project Superintendent and all other trades associated with this cope of work to review plans, specifications, means and methods. Presence at weekly scheduling meetings is required.
16. Clean-up is to be done on a daily basis and as directed by our Project Superintendent. dumpster and water provided by gc.

**SUBCONTRACT SUM: $741,250.00 (SEVEN HUNDRED FORTY-ONE THOUSAND TWO HUNDRED FIFTY DOLLARS AND ZERO CENTS)** winter protection not included in this contract. Lump sum only if winter protection is needed.

**Contract Documents:**

1. *This Subcontract Agreement* ("Agreement").
2. The building drawings as listed in Exhibit A, attached, as prepared by JKR Partners, LLC, and if applicable, the civil drawings as prepared by Dunn & Sgromo Engineers, PLLC.
3. Addendum One.
4. Project Manual as prepared by JKR Partners, LLC, dated July, 2015, to include Specifications and *Geotech Report*.
5. The Contract, including General Conditions and Supplemental Conditions and Addenda between the Owner and the Contractor.
6. Contractor's Safety Rules, attached as Exhibit B.
7. Applications for Payment, including *Schedule of Values, attached as* Exhibit C.
8. Project Schedule, attached as Exhibit D.
9. Supplemental Contract Terms, Exhibit E.

INITIAL LW / CR

Case 5:19-cv-00285-LEK-ML Document 15-7 Filed 06/28/19 Page 2 of 5



**Time of Completion:** Subcontractor's Time of Completion shall be the date shown for their scope of work as per Exhibit D, so that the overall project achieves Substantial Completion as shown. The Contractor reserves the right to update Exhibit D.

1. THE WORK

1.1 The Subcontractor represents that it is fully qualified and licensed to perform this Agreement, and acknowledges that, prior to the execution of this Agreement it has (a) by its own independent investigation ascertained (i) the Work required by this Agreement (ii) the conditions involved in performing the Work, and (iii) the obligations of this Agreement and the Contract Documents; and (b) independently verified all information furnished by the Owner, General Contractor, or others satisfying itself as to the correctness and accuracy of that information. Any failure by Subcontractor to investigate independently and become informed will not relieve the Subcontractor from its responsibilities hereunder nor serve as a basis for an adjustment to the Subcontract Sum.

1.2 The Subcontractor shall provide all necessary labor, material, equipment, tools, shop drawings, layout, samples, professional services, taxes, permits, fees, licenses, insurances, etc. to perform the Work. Subcontractor shall include in their schedule two weeks for shop drawing review.

1.3 If the Subcontractor provides design build services the Work shall include all labor, materials, equipment and services provided to fulfill the design build services. The Subcontractor represents that their design build services shall be consistent with the Project Criteria, and that they shall comply with professional standards, and all applicable laws, ordinances, codes, rules, and regulations governing the design of the Project and that the Contractor and Contractor's Owner shall be entitled to rely up on the adequacy, accuracy and completeness of the services. If the design build Work requires that the Subcontractor provides professional design services or certifications related to systems, materials or equipment, or when the Subcontractor in its discretion provides such design services or certifications through a subsubcontractor the Subcontractor shall cause professional design services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional.

1.4 The Work shall be performed in accordance with all applicable local, state and federal codes, laws and regulations (including OSHA) and in accordance with the Contract Documents.

1.5 Subcontractor shall keep the Project free and clean of trash and debris attributable to the Work. On twenty-four (24) hours written notice by the Contractor, Subcontractor shall remove all trash and debris or be responsible for the cost, plus twenty percent, incurred by Contractor to do same.

1.6 The Subcontractor shall furnish a workforce that will work in harmony with all others on the Project. The Subcontractor shall not suffer, support or take any action to picket, strike, handbill, engage in sympathy or unfair labor practice strikes, or any work stoppages or otherwise interfere with the Work or the business of the Contractor or any of its subcontractors. The Subcontractor shall not suffer its employees to honor or recognize any picket line by any union against the Contractor.

1.7 Subcontractor agrees promptly to make good, without cost to the Owner or Contractor, any and all defects due to faulty workmanship and/or materials which may appear within the guaranty or warranty period established in the Contract Documents or for one year from Owner's acceptance of the Contractor's work, whichever is later.

1.8 ~~Time is of the essence of this Agreement. Subcontractor shall provide sufficient manpower to complete the Work on or before the date established as Time of Completion stipulated herein, including working his forces overtime at no cost to the Contractor, if deemed necessary by the Contractor to meet the date established as Substantial Completion as established in Exhibit D.~~ CR / LW

1.9 The Subcontractor shall be bound by the terms of the Specifications, General Conditions and Supplemental Conditions and Addenda in the Contract between the Contractor and the Owner, shall conform to and comply with the Drawings and Specifications and Addenda, and shall assume toward the Contractor all the obligations and responsibilities that the Contractor assumes toward the Owner.

1.10 If the Work is delayed, substantially without fault or responsibility of Subcontractor, the Subcontractor may receive an extension of the contract time. Subcontractor expressly understands that its sole and exclusive remedy for delay will be an extension of time for performance of the Work, provided Subcontractor gives written notice to the Contractor within five (5) business days of the event giving rise to the delay.

2. PAYMENTS

2.1 Progress payments: Subcontractor shall submit to the Contractor an Application for Payment for progress payment, completed in full, signed and notarized, an updated Schedule of Values, as attached, on or before the 20th day of each month for that portion of the Work completed through the end of the month, less ten percent (10%) retainage. Progress Applications for Payment may be sent electronically via E-mail or facsimile. The last Application for Payment shall serve as Application for Progress Payment as well as Application for Final Payment.

2.2 For Projects located in states that require a Notice of Furnishing or similar notice, Unconditional Progress Waiver of Liens shall be required for all suppliers or subsubcontractors who have furnished said notice for the previous progress payment before funds will be released for subsequent progress payments.

2.3 Contractor agrees to pay Subcontractor within thirty (30) days from the end of the month in which the Work was performed and the Application for Payment and current Schedule of Values is submitted, or within ten (10) business days following Contractor's receipt of payment from the Owner for the Work, whichever is later. If the Application for Payment and/or Schedule of Values are incomplete, or received after the 20th of the month in which the work was performed, payment shall not be due until 30 days from the end of the month in which the corrected/completed paperwork is received. It shall be an express condition precedent to Contractor's obligations to pay Subcontractor any amount under this Contract that Contractor shall have first actually received payment for the Work from the Owner.

2.4 Final payment shall be paid to Subcontractor upon Contractor's receipt of:

a. Final payment by Owner.
b. Unconditional Final Waiver of Lien from Subcontractor in original form.
c. Unconditional Final Waiver of Liens from all subsubcontractors pursuant to paragraph 2.2 above.
d. Written statement of guaranty of work, warranties, manuals, as-builts, and any other documents from Subcontractor as required by the Contractor or Owner.

2.5 If Contractor is notified of any claim or pending claims against Subcontractor, Contractor, at its discretion has the right to withhold

INITIAL LW / CR

sufficient funds from any payment due Subcontractor to cover the cost of the claim, pending final settlement. Contractor has the right to require lien waivers from Subcontractor and from Subcontractor's suppliers and subsubcontractors before releasing payment to Subcontractor. If Subcontractor fails to settle any claim, Contractor shall have the right to pay the Subcontractor's sub-subcontractors or suppliers directly and deduct those payments from the Subcontract Sum. Any expenses incurred by the Contractor including but not limited to costs associated with bonding of liens, attorneys' fees, court costs and Contractor's personnel expenses incurred in order to resolve claims shall be deducted from the Subcontract Sum. In the event that the cost to resolve said claims is greater than the unpaid amounts and retainage, Subcontractor shall pay those amounts to Contractor upon receipt of a written statement from the Contractor. If such amounts are not paid within fifteen (15) days of receipt of statement, Subcontractor agrees to pay Contractor interest on all such amounts at a rate of twelve percent (12%) per annum and Subcontractor agrees to pay all costs of collection, including but not limited to court costs and attorney's fees.

## 3. CHANGES IN WORK

3.1 Subcontractor expressly agrees that no changes will be made, nor extra work performed, nor changes made in the quality or quantity of materials furnished, nor additional compensation paid, unless such matter is previously authorized by the Project Manager in the form of a written change order.

3.2 If the written change order entitles the Subcontractor to additional compensation, the change order must include written documentation from any subsubcontractors or suppliers that are entitled to compensation pursuant to or as a result of the written change order.

3.3 Any work that is deemed a change in value for the Subcontract Sum, and which would delay Subcontractor or Contractor's scheduled completion, and for which the parties do not agree as to the value, shall upon twenty four (24) hours written notice, be diligently prosecuted by the Subcontractor according to the following guidelines: The Contractor shall determine an undisputed amount for the change order work, which shall be billed in accordance with the Payment terms herein. The disputed amount shall be submitted to the Owner or Owner's agent for their ruling as to the value of the work. The decision as to the value of the work shall be based on the Owner or Owner's representative's ruling, and this amount shall thereby be the agreed upon value of the work.

3.4 Subcontractor will give Contractor written notice of any claims relating to Subcontractor's performance under this Agreement, including claims for which Contractor or Owner might be liable, within three (3) calendar days of the occurrence of the condition or event which forms the basis of such claim. Failure to provide such written notice within the three-day period constitutes a waiver of any such claim.

## 4. INSURANCE

4.1 The Subcontractor shall procure and maintain at the Subcontractor's own expense, during the entire contract time, Liability Insurance as hereinafter specified:

a. Business Automobile Liability shall be provided for a Combined Single Limit of at least $1,000,000 for Bodily Injury and Property Damage. Coverage shall include owned, leased, hired and non-owned vehicles. Contractor shall be named as Additional Insured.

b. Workers Compensation Insurance for the protection of all Subcontractor's employees including partners and individual owners working on or in connection with the Project.

c. Commercial General Liability shall be provided for a Combined Single Limit of at least $1,000,000 for each occurrence, $1,000,000 Personal Injury and Advertising Liability, $2,000,000 Products and Completed Operations aggregate and $2,000,000 general aggregate. The policy shall contain no restrictions for contractual liability and xcu (explosion, collapse and underground). Contractor shall be named as additional insured, per form CG2010 1186 or equivalent. Subcontractor shall maintain Products and Completed Operations insurance and shall name Contractor as additional insured for at least two (2) years from the date of final payment. Subcontractor's insurance shall be primary and non-contributing so that the Contractor's policy will not respond until the limits under the Subcontractor's policy are exhausted.

d. Commercial Umbrella Liability shall be provided for at least $1,000,000 and shall be as broad as the primary General Liability and Automobile.

e. Professional Liability Insurance coverage shall be provided in the amount of no less than $2,000,000 per occurrence and $2,000,000 in the aggregate. Any deductible applicable to this coverage will not exceed $100,000. This insurance requirement applies to ANY subcontractor who in the course of their engagement on this project provides any of the following services: design-build; design; engineering; inspecting; drafting; consulting or advising. Contractor is to be named as an Additional Insured on this policy and evidence of such will be provided on the Certificate of Insurance provided to Contractor.

4.2 Certificates of Insurance, including a copy of the additional insured endorsement, acceptable to Contractor must be provided prior to Subcontractor commencing any work or ordering any materials. Renewal certificates must be provided no less than 14 days prior to expiration. All insurance carriers named in the Subcontractor's certificate of insurance shall have an A.M. rating of A- or better. The Certificates must also contain a provision that coverage afforded under the policies will not be canceled unless at least thirty (30) days prior written notice has been given to Contractor. Contractor shall not make any payment to Subcontractor until proper evidence of insurance is received. If Subcontractor performs any portion or all of the Work without the required insurances, Contractor shall deduct the greater of twenty five percent (25%) broken down as follows: 10% for General Liability, 10% for Workers Compensation, 3% for Automobile Liability and 2% for Umbrella coverage of the Subcontract Sum, or the value of the insurance premium as solely determined by Contractor's insurance carrier.

4.3 Waiver of Subrogation: Subcontractor waives all rights against Contractor, Owner and owner's design professional and their respective agents, officers, directors and employees for recovery of damages caused by fire or other causes of loss to the extent such damages are covered by any insurance provided under this Subcontract Agreement.

## 5. INDEMNIFICATION

5.1 The Subcontractor shall indemnify and hold harmless Contractor and its agents and employees from and against any and all liability, suits, actions, claims, damages, losses, judgments, settlements, costs and expenses, including attorney's fees and litigation costs (including fees and expenses of consultants and/or expert witnesses), arising out of, related to or resulting from

the Subcontractor's performance of the Work, provided that such suit, action, claim, damage, loss, or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use therefrom, and is caused in whole or in part by any negligent or willful act or omission of the Subcontractor, its sub-subcontractors, suppliers, anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable.

5.2 In any or all claims against the Contractor, or any of its agents or employees, by any employee of the Subcontractor, anyone directly or indirectly employed by Subcontractor, or anyone for whose acts any of them may be liable, the indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation, of benefits payable by or for the Subcontractor under workers compensation acts, disability benefits acts, or any other employee benefit acts.

5.3 If Contractor is assessed liquidated damages or other damages for delay on the Project, the Contractor may assess delay damages against Subcontractor according to Subcontractor's responsibility for the delay. In addition, Subcontractor shall be liable to Contractor for actual damages including, without limitation, reasonable attorney's fees caused by Subcontractor's delay.

5.4 The Contractor shall not be responsible for acts or omissions of any design build components of the Work by the design build Subcontractor, its architect, subsubcontractor or their agents or employees, or any other persons or entities performing portions of design build work.

5.5 Subcontractor shall at all times comply with all safety regulations as set forth by any state regulatory agency or any federal regulatory agency and shall indemnify Contractor against all claims and/or penalties arising from inspections by these agencies.

## 6. TERMINATION AND SUPPLEMENTING FORCES

6.1 The failure by Subcontractor to supply a sufficient number of skilled workmen, or to supply the specified or required materials, or sufficient and proper equipment, to prosecute the Work in a manner to comply with the date established as Time of Completion, to pay in a timely manner for third party materials, equipment and labor, or to perform any covenant contained in the Contract Documents, shall constitute a default of the Subcontractor, and Contractor may after forty-eight (48) hours of written notice of said default to Subcontractor, move to exercise its rights and remedies pursuant to articles 6.2 and 6.3, at Contractor's sole option.

6.2 In the event of default by Subcontractor and subsequent termination of Subcontractor by Contractor, Contractor shall complete the Work through its own or third party forces, and shall deduct the costs thereof from the unpaid amounts and retainage of this Subcontract. In the event the cost to complete the Work is greater than the unpaid amounts and retainage, Subcontractor shall pay those amounts to Contractor upon receipt of a written statement from the Contractor. If such amounts are not paid by Subcontractor within fifteen (15) days of receipt of statement, Subcontractor agrees to pay Contractor interest on all such amounts at a rate of twelve percent (12%) per annum, and Subcontractor further agrees to pay any and all costs of collection, including but not limited to court costs and attorney's fees.

6.3 In the event the Contractor determines that the progress of the Work is not sufficient to meet the Time of Completion, the Contractor has the right, with forty-eight (48) hours written notice to the Subcontractor, to hire third party forces to supplement the Subcontractor's forces. All such supplemental charges incurred shall be deducted from the Subcontract Sum. In the event that the cost to supplement forces is greater than the unpaid amounts and retainage, Subcontractor shall pay those amounts to Contractor upon receipt of a written statement from the Contractor. If such amounts are not paid within fifteen (15) days of receipt of statement, Subcontractor agrees to pay Contractor interest on all such amounts at a rate of twelve percent (12%) per annum and Subcontractor agrees to pay all costs of collection, including but not limited to court costs and attorney's fees.

6.4 The Contractor may, at any time, terminate the Subcontract for the Contractor's convenience and without cause. Upon receipt of written notice from the Contractor of such termination for the Contractor's convenience, the Subcontractor shall cease operations as directed by the Contractor in the notice; take actions necessary for the protection and preservation of the Work; and except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subsubcontracts and purchase orders and enter into no further subsubcontracts and purchase orders. In case of such termination for the Contractor's convenience, the Subcontractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the executed Work. Subcontractor shall not be entitled to overhead and profit for unexecuted Work.

## 7. DISPUTES

7.1 The interpretation, performance and enforcement of this Agreement will be governed by the laws of the Commonwealth of Virginia.

7.2 Any and all claims, disputes and other matters in questions arising out of or relating to this Agreement, or breach thereof, will be resolved, at Contractor's option (1) by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association in the County of ~~Chesterfield, Virginia~~; or (2) in the ~~Circuit Court of Chesterfield County, Virginia~~ or such other venue as may be agreed upon by Contractor. Contractor and Subcontractor hereby waive their right to demand a jury trial. In the event that Contractor prevails in such arbitration or litigation, Subcontractor shall pay Contractor the costs and expenses, including such reasonable attorney's fees and costs, including expert witness fees and expenses, incurred by Contractor in such arbitration or litigation.

7.3 Subcontractor shall turn the Work over to Contractor in good condition, free and clear of all claims, encumbrances and liens growing out of the performance of this Agreement. In the event a mechanic's or materialman's lien is filed by reason of work done or materials furnished to or by the Subcontractor or any of its sub-subcontractors, Subcontractor will, upon demand by Owner or Contractor and at Subcontractor's expense, cause such lien to be released of record, by bonding or otherwise. If Subcontractor fails to do so within a reasonable time after demand, Owner or Contractor may take such action as shall be necessary to remove such lien of record and if either of them do so, Subcontractor will, upon demand, reimburse them for all costs incurred, including, without limitation, attorney's fees.

Onondaga, New York [initials]   New York State Supreme Court, Onondaga County [initials]

## 8. MISCELLANEOUS PROVISIONS

8.1 Any amounts owed to Subcontractor under this Subcontract Agreement may be withheld by Contractor and applied to any actual or potential amounts or sums that are, or may be owed during the current time of the Subcontractor's performance by Subcontractor to Contractor, on this, or any other project under construction during the same general timeframe, or contract between Contractor and Subcontractor including, without limitation, legal expenses and costs associated therewith.

8.2 Contractor has the right to demand that Subcontractor will furnish Contractor with an affidavit which lists all subsubcontractors and material suppliers who have or will perform work or supply material to Subcontractor as part of the Work, together with a

INITIAL [initials] / [initials]

Case 5:19-cv-00285-LEK-ML Document 15-7 Filed 06/28/19 Page 5 of 5



statement of balance currently owing or to be owed or to be claimed by each subsubcontractor or supplier. The affidavit will be provided within ten (10) days of demand.

8.3 The partial or complete invalidity of any one or more provisions of this Agreement shall not affect the validity or continuing force and effect of any other provision. The failure of either party to insist, in any or more instances, upon the performance of any of the terms, covenants, or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respect to further performance.

8.4 This Agreement and the Contract Documents constitute the entire agreement between parties and may not be amended, superseded or otherwise affected, except by an agreement in writing signed by both parties. This subcontract or the amounts due hereunder cannot be sublet or assigned in whole or in part without prior written approval from the Contractor.

8.5 Written notice shall be deemed to have been duly served if delivered in person to the individual, to a member of the firm or entity, or to an officer of the corporation for which it was intended; or if delivered at, or sent by registered or certified mail or by courier/overnight service providing proof of delivery to the last business address known to the party giving notice.

8.6 The individual signing below has read and understands all of the terms described herein, and has the capacity to bind the Subcontractor.

This Agreement is entered into as of the day and year first written above.

| CONTRACTOR: EDC | SUBCONTRACTOR: C & D LAFACE CONSTRUCTION, INC. |
|---|---|
| BY: [signature] | BY: Carmena Rachetta, president |
| NAME: Christopher Walsh | NAME: Carmena Rachetta |
| TITLE: Project Manager | TITLE: President |