UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CAMERON GROUP, LLC and
HINSDALE ROAD GROUP, LLC,

Plaintiffs,

v.

EILERSON DEVELOPMENT CORPORATION,
AMERISURE INSURANCE COMPANY, and
AMERISURE MUTUAL INSURANCE COMPANY,

Defendants-Third Party Plaintiffs,

v.

SELECTIVE INSURANCE GROUP, INC. d/b/a SELECTIVE
INSURANCE COMPANY OF AMERICA, and
C&D LAFACE CONSTRUCTION, INC.,

Third-Party Defendants.

**Civil Action No.:**
**5:19-cv-00285-LEK-ML**

**DEFENDANT SELECTIVE INSURANCE COMPANY OF AMERICA's STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56(a)(1), defendant, Selective Insurance Company of America, sets forth below its Statement of Facts:

**The Underlying Project**

1. Prior to November 5, 2015, Hinsdale Road Group was a private equity group which was formed to develop a certain parcel of real estate located at or about 180 Township Boulevard in Camillus, New York. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit B, pg. 22, ¶¶ 8-10**).

2. The site, known as the Township 5 project, is a commercial retail site, and would include, *inter alia*, a Movie Tavern Theatre ("MTT") franchise, a feature tenant. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit B, pgs. 40, ¶ 25, pg. 41, ¶¶ 1-17**).

3. The Cameron Group, LLC ("Cameron"), was engaged by Hinsdale Road Group, LLC ("Hinsdale") to attract and ultimately retain tenants for the Township 5 location. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit B, pg. 28, ¶¶ 24-25, pg. 29, ¶¶1-3**).

4. As part of this process, Cameron engaged, and ultimately secured, MTT to build a cinema at the Township 5 development site. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit B, pg. 40, ¶ 25, pg. 30-33**).

5. Hinsdale remained the owner of the parcel, but MTT was given a 25-year leasehold on the ground. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit B, pg. 28, ¶¶ 5-15**).

6. With the lease secured, MTT then retained Eilerson Development Corporation ("EDC") to serve as the general contractor for the build out of the MTT premises. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit B, pg. 62, ¶¶ 4-12**).

7. EDC, by way of contract dated September 9, 2015, then entered into an agreement with C&D Laface Construction, Inc. ("Laface"), wherein Laface would perform all "Masonry, Cast Stone and Brick Veneer" work at the project site. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit B, pg. 109-114**).

**The Underlying Incident**

8. On November 5, 2015, Mr. Shaun Atkinson was injured when he was struck by a lift being operated by Mr. John Miller (the "incident"). (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibits "A" & "E"**).

9. At the time of the incident, Mr. Atkinson was engaged within the scope of his employment with Laface as a brick layer. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit A, pg. 48, 11-17**).

10. At the time of the incident, Mr. Miller was also employed by Laface and was allegedly acting within the scope of his employment. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit A, pg. 43, ¶¶ 5-7**).

11. As a result of being struck by the forklift, Mr. Atkinson was allegedly pulled underneath the machine and sustained significant bodily injuries. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit A, pg. 64, ¶¶ 1-12**).

**The Underlying Lawsuit**

12. By way of a Summons and Complaint filed in and for the Supreme Court of the State of New York, Onondaga County, on May 14, 2018, and bearing Index Number 004808, Mr. Atkinson and his wife, Vanessa Atkinson, commenced a lawsuit against Eilerson Development Corporation a/k/a EDC, the Cameron Group, LLC, Movie Tavern Theatres, LLC, and Southern Theatres, LLC.[1] (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit E**).

13. Therein, Mr. and Mrs. Atkinson sought damages as a result of the injuries and life disruptions caused by the events of November 5, 2015, pursuant to Labor Law §§ 241(6) and 200, respectively. (*Id.*).

[1] Upon information and belief, Southern Theatres is the parent corporation of MTT.

**The Relevant Insurance Claims**

14. On or about June 1, 2018, counsel to EDC in the Underlying Action requested additional insured coverage and contractual indemnification from Laface and Selective Insurance Company of America ("Selective"). (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "F"**).

15. By way of letter dated June 27, 2018, Selective responded to EDC's tender letter and acknowledged that EDC qualified as an additional insured under a certain policy of Commercial General Liability insurance that Selective issued to Laface under policy number S2056307 and having effective dates from December 15, 2014 through December 25, 2015 ("Selective CGL policy"). (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "G"**).

16. As part of its June 27, 2018, letter, Selective acknowledged that pursuant to the terms and conditions of the Selective CGL policy at issue, Selective would provide primary coverage to EDC for any loss arising out of the Underlying Incident up to its $1,000,000 policy limit. (*Id.*).

17. Selective further acknowledged that it would defend EDC's interests, and accordingly, requested that the file be transferred to the Lippman O'Connor firm for future handling. (*Id.*).

18. Upon information and belief, by way of letter dated July 2, 2019, The Hanover Insurance Group also sought additional insured coverage for Cameron/Hinsdale from EDC. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "H"**).

19. On or about August 3, 2019, Amerisure Insurance ("Amerisure"), as insurer to EDC, rejected the Cameron/Hinsdale tender on the basis that while EDC qualified as an additional insured under the Amerisure CGL policy, all coverage afforded thereunder was excess of any and all other available insurance. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "I"**).

**<u>The Current Lawsuit</u>**

20. On or about December 16, 2018, Cameron and Hinsdale commenced a Declaratory Judgment Action in and for the Supreme Court of Onondaga County which, *inter alia*, challenged Amerisure's previous denial letter (*see* Docket No. 2).

21. Amerisure immediately filed removal papers on the basis of diversity jurisdiction, and the matter was transferred to the United States District Court for the Northern District of New York, wherein Amerisure eventually interposed an Answer on March 7, 2019 (*see* Docket No. 5).

22. EDC joined issued in the instant lawsuit by the filing of an Answer on March 18, 2019 (*see* Docket No. 7).

23. Amerisure and EDC commenced third-party actions against Selective and Laface by way of separate Complaints both dated June 28, 2019 (*see* Docket Nos. 14 and 15, respectively).

24. Therein, both Amerisure and EDC asserted that EDC was entitled to additional insured status, on a primary basis, under the Selective CGL Policy. (*Id.*).

25. Amerisure and EDC also sought a declaration that Selective's Umbrella Policy provided coverage to EDC, and that such coverage also applied before EDC's policies with Amerisure were triggered. (*Id.*).

26. Even though Amerisure and EDC had denied the tender of Cameron, Hinsdale and MTT, their respective Joinder Complaints against Selective further sought declaratory relief providing that Selective's CGL and Umbrella policies, respectively, provided primary, non-contributory coverage for Cameron, Hinsdale and MTT. (*Id.*).

27. Selective and EDC joined issue by service of Answers to both Joinder Complaints on August 21, 2019 (*see* Docket Nos. 26 and 27, respectively).

28. With regard to Selective's position, the Answer denies any obligation for Selective to provide additional insured status to Cameron, Hinsdale and/or MTT. (*Id.*).

29. Selective asserted in its Answer that Cameron, Hinsdale and/or MTT were not in privity of contract with Selective's named insured, Laface. (*Id.*).

30. Moreover, because Amerisure and EDC continued to neglect their obligations to Cameron, Hinsdale and MTT, they had no standing to assert claims on each parties' respective behalf. (*Id.*).

31. Finally, Selective denied that the Selective Umbrella Policy, which covered EDC, provided coverage to such an extent that it had an obligation to attach before the exhaustion of the Amerisure CGL policy. (*Id.*).

32. Amerisure and EDC's claims for contractual relief against Laface were discontinued by way of voluntary discontinuance which this Court entered on December 17, 2019 (*see* Docket No. 29).

**The EDC/Laface Contract**

33. As part of the Township 5 Project, on September 9, 2015, EDC entered into a subcontract with Laface which provided Laface would "complete all MASONRY,

CAST STONE, AND BRICK VENEER work…"(*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "J"**).

34. At Article Four of that Contract, the parties agreed:

> 4. INSURANCE
>
> 4.1 The Subcontractor shall procure and maintain at the Subcontractor's own expense, during the entire contract time, Liability Insurance is hereinafter specified as:
>
> ***
>
> c. Commercial General Liability shall be provided for a Combined Single Limit of at least $1,000,000 for each occurrence, $1,000,000 Personal Injury and Advertising Liability, $2,000,000 Products and Completed Operations aggregate and $2,000,000 general aggregate. The policy shall contain no restrictions from contractual liability and xcu (explosion, collapse and underground). Contractor shall be named as additional insured, per form CG 20 10 1185 or equivalent. Subcontractor shall maintain Products and Completed Operations Insurance and shall name Contractor as additional insured for at least two (2) years from the date of final payment. Subcontractor's insurance shall be primary and non-contributory so that the Contractor' policy will not respond until the limits under the Subcontractor's policy are exhausted.
>
> d. Commercial Umbrella Liability shall be provided for at least $1,000,000 and shall be as broad as the primary General Liability and Automobile.
>
> 4.2 Certificates of Insurance, including a copy of the additional insured endorsement, acceptable to Contractor must be provided prior to the Subcontractor commencing any work or ordering any materials. Renewal certificates must be provided no less than 14 days prior to expiration. All Insurance carriers named in the sub contractor's certificate of insurance shall have A.M. rating of A- or better. The Certificates must also contain a provision that coverage afforded under the policies will not be canceled unless at least thirty (30) days prior written notice has been given to Contractor. Contractor shall not make any payment to Subcontractor until proper evidence of Insurance is

> received. If Subcontractor performs any portion of all of the Work without the required Insurances, Contractor shall deduct the greater of twenty five percent (25%) broken down as follows: 10% for General Liability, 10% for Workers' Compensation, 3% for Automobile Liability and 2% for Umbrella coverage of the Subcontract Sum, or the value of the Insurance premium are solely determined by the Subcontractor's carrier.

(*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "J"**).

**The Selective CGL Policy**

35. Selective issued a Commercial General Liability policy of insurance to Laface under Policy Number S2056307, having effective dates from December 25, 2014 through December 25, 2015, and providing up to $1,000,000 in coverage per occurrence. ("the Selective CGL Policy"). The policy also included a $2,000,000 limit for aggregate losses. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

36. In relevant part, at Page 5 of Endorsement CG 72 02 12 11, the Selective CGL policy provides the following Additional Insured Endorsement:

> **Blanket Additional Insureds - As Required By Contract**
>
> Subject to the **Primary and Non-Contributory** provision set forth in this endorsement, **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your ongoing operations, "your product", or premises owned or used by you; however this provision does not include any architects, engineers, or surveyors with respect to any injury or damage arising out of the rendering or failure to render any professional services by or for you, including:
>
> **a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys,

> field orders, change orders or drawings and specifications; and
>
> **b.** Supervisory, inspection, architectural or engineering activities.
>
> **2.** Your maintenance, operation or use of equipment, other than aircraft, "auto" or watercraft, rented or leased to you by such person or organization. A person or organization's status as an additional insured under this endorsement ends when their contract, or agreement with you for such rented or leased equipment ends. With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the rental agreement or equipment lease expires.
>
> The provisions of this coverage extension do not apply unless the written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage" or "personal and advertising injury".

(*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

37. Per the explicit policy language, additional insured status is only conferred where Laface agreed in written contract or agreement to provide "such person or organization be added as an additional insured on [this] policy." (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

38. In the matter at bar, Laface did not enter into a contract with Cameron, and therefore, Cameron does not qualify as an additional insured under the terms of the Selective CGL policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "C"**).

39. In the matter at bar, Laface did not enter into a contract with Hinsdale, and therefore Hinsdale does not as an additional insured under the terms of the Selective CGL policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit B, pg. 102, ¶¶ 15-18**).

40. In the matter at bar, Laface did not enter into a contract with MTT, and therefore MTT does not qualify as an additional insured under the terms of the Selective CGL Policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "C"**).

41. In the matter at bar, Article 4 of the EDC/Laface Contract does not contain a requirement that Laface procure insurance for Cameron. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "J"**).

42. In the matter at bar, Article 4 of the EDC/Laface Contract does not contain a requirement that Laface procure insurance for Hinsdale. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "J"**).

43. In the matter at bar, Article 4 of the EDC/Laface Contract does not contain a requirement that Laface procure insurance for MTT. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "J"**).

44. The EDC/Laface Contract does contain an obligation for Laface to procure insurance for EDC. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "J"**).

45. Selective's June 27, 2018, letter recognized EDC as an additional insured pursuant to this provision of the Selective CGL Policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "G"**).

46. Selective has never denied coverage to EDC under the Selective CGL Policy. (*see* Docket Nos. 26 and 27, respectively).

47. Selective has been defending EDC under the Selective CGL Policy since June 27, 2018. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "G";** *see also* Docket Nos. 26 & 27).

**The Selective Umbrella Policy**

48. Selective issued a Commercial Umbrella policy of insurance to Laface under Policy Number S2056307, having effective dates from December 25, 2014 through December 25, 2015, and providing up to $5,000,000 in coverage per occurrence. ("Selective Umbrella Policy"). The policy also included a $10,000,000 limit for aggregate losses. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

49. At Page 1 of Endorsement CXL 4 04 03, the Selective Umbrella Policy provided the following grant of coverage:

> **SECTION I — COVERAGES A. Insuring Agreement**
>
> **1.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" or offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

(*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

50. The Selective Umbrella Policy extended coverage to Additional Insureds at Page 8 of Endorsement CXL 4 04 03 which provided:

> **SECTION II — WHO IS AN INSURED**
>
> **A.** Except for liability arising out of the ownership, maintenance, or use of "covered autos":
>
> **5.** Any additional insured under any policy of "underlying insurance" will automatically be insured under this insurance
>
> If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "underlying insurance", subject to **Section III — Limits of Insurance.** Additional insured coverage provided by this insurance will not be broader than coverage provided by "underlying insurance".

(*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

51. Finally, the Selective Umbrella Policy provided the following "Other Insurance" Clause at Page 12 of Endorsement CXL 4 04 13:

> **SECTION IV — CONDITIONS**
>
> **H. Other Insurance**
>
> 1. This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.
>
> When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has the duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

2. When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

   a. The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   b. The total of all deductible and self-insured amounts under all that other insurance.

(*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

52. Pursuant to Section II – Who is an Insured, the Selective Umbrella Policy only provides coverage for those entities who qualify as additional insureds on "underlying insurance." (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

53. Because Cameron does not qualify as an additional insured on the Selective CGL Policy, it is not entitled to coverage under the Selective Umbrella Policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

54. Because Hinsdale does not qualify as an additional insured on the Selective CGL Policy, it is not entitled to coverage under the Selective Umbrella Policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

55. Because MTT does not qualify as an additional insured on the Selective CGL Policy, it is not entitled to coverage under the Selective Umbrella Policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

56. Because EDC does qualify as an additional insured under the Selective CGL Policy, it likewise is an insured under the Selective Umbrella Policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

57. Per the terms of Section II—Who is an Insured, EDC's coverage under the Selective Umbrella Policy is limited to the "amount of insurance required by the contract, less any amounts payable by any 'underlying insurance', subject to **Section III — Limits of Insurance."** (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

58. The EDC/Laface Contract requires that Laface purchase $1,000,000 in Commercial Umbrella Liability. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "J"**).

59. As a result, EDC's coverage is limited under the Selective Umbrella Policy to $1,000,000. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibits "J" & "K"**).

60. Further, by its terms, the Selective Umbrella Policy is "excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis." (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

61. The Selective Umbrella Policy is excess to, and will not contribute with, any payments made under EDC's Commercial General Liability policy with Amerisure. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibits "K" & "L"**).

62. The Selective Umbrella Policy is, at least, co-excess with the coverage afforded to EDC under Amerisure's Commercial Umbrella policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibits "K" &"L"**).

## The Amerisure CGL Policy

63. Amerisure issued a Commercial General Liability policy of insurance to EDC under Policy Number CPP20737370601, having effective dates from December 31, 2014 through December 31, 2015, and providing up to $1,000,000 in coverage per occurrence ("Amerisure CGL Policy"). The policy also included a $2,000,000 limit for aggregate losses. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "L"**).

64. At Page 12 of Endorsement CG 00 01 04 13, the Amerisure CGL Policy provided the following "other insurance" provision:

> **Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> **a. Primary Insurance**
>
> This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.
>
> **b. Excess Insurance**
>
> **(1)** This insurance is excess over:
>
> **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:
>
> **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
>
> **(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
>
> **(iii)** That **is** insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily

occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** — Coverage **A** — Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "K"**).

65. By its terms, the Amerisure CGL Policy applies as excess only where the EDC is an additional insured on another primary policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "L"**).

66. The Amerisure CGL Policy, by its terms, provides coverage to EDC that is excess of the Selective CGL Policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibits "K" & "L"**).

67. The Amerisure CGL Policy, by its terms, provides coverage to EDC that is primary to the Selective Umbrella Policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibits "K" & "L"**).

**The Amerisure Umbrella Policy**

68. Amerisure issued a Commercial Umbrella policy of insurance to EDC under Policy Number CU 20737380402, having effective dates from December 31, 2014 through December 31, 2015, and providing up to $10,000,000 in coverage per occurrence ("Amerisure Umbrella Policy"). The policy also included a $10,000,000 limit for aggregate losses. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "L"**).

69. At Page 12 of Endorsement CG 00 01 04 13, the Amerisure CGL Policy provided the following "other insurance" provision:

> **5. Other Insurance**
>
> **a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.
>
> When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
>
> **b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:
>
> **(1)** The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and
>
> **(2)** The total of all deductible and self-insured amounts under all that other insurance.

(*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibit "L"**).

70. The Amerisure Umbrella Policy contains an "other insurance" clause that is the functional equivalent of the Selective Umbrella Policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibits "K" & "L"**).

71. Because both the Amerisure Umbrella Policy and the Selective Umbrella Policy share on a co-excess, ratable basis, they contribute based upon their limits of $10,000,000 and $1,000,000, respectively. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibits "K" & "L"**).

72. Here, as both polices are excess of the Selective CGL Policy and the Amerisure CGL Policy, the Amerisure Umbrella Policy will contribute 10/11 of any exposure beyond the total coverage afforded by the Selective CGL Policy and the Amerisure Excess Policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibits "K" & "L"**).

73. Here, as both polices are excess of the Selective CGL Policy and the Amerisure CGL Policy, the Selective Umbrella Policy will contribute 1/11 of any exposure beyond the total coverage afforded by the Selective CGL Policy and the Amerisure Excess Policy. (*see* Affirmation of Steven E. Peiper, dated February 26, 2021, **Exhibits "K" & "L"**).

DATED: Buffalo, New York
February 26, 2021

HURWITZ & FINE, P.C.

By ______________________
Steven E. Peiper, Esq.
*Attorneys for Defendant,*
1300 Liberty Building
424 Main Street
Buffalo, New York 14202
(716) 849-8900
sep@hurwitzfine.com

TO: Daniel W. Gerber, Esq.
GERBER CIANO KELLY BRADY, LLP
*Attorneys for Defendants,*
*AMERISURE INSURANCE COMPANY*
*and AMERISURE MUTUAL INS. CO.*
350 Main Street, Suite 2400
Buffalo, New York 14202

Stephen A. Davoli, Esq.
SUGARMAN LAW FIRM, LLP
*Attorneys for Plaintiffs,*
*CAMERON GROUP, LLC*
*and HINSDALE ROAD GROUP, LLC*
211 West Jefferson Street
Syracuse, New York 13202

Johan A. Obregon, Esq.
CALLAHAN & FUSCO, LLC
*Attorneys for Defendant,*
*EILERSON DEVELOPMENT CORPORATION*
40 Exchange Place, 18th Floor
New York, New York 10005