# AIA® Document A101™ – 2007

## ***Standard Form of Agreement Between Owner and Contractor*** *where the basis of payment is a Stipulated Sum*

**AGREEMENT** made as of the 7th day of August in the year 2015
*(In words, indicate day, month and year)*

**BETWEEN** the Lessee and the Land Owner, together, herein referred to as Owner:
*(Name, legal status, address and other information)*

Movie Tavern Theaters, LLC
305 Baronne Street, Suite 900
New Orleans, LA 70112
(Lessee)

Hinsdale Road Group, LLC
c/o The Cameron Group, LLC
6007 Fair Lakes Road, Suite 100
East Syracuse, NY 13057
(Land Owner)

and the Contractor:
*(Name, legal status, address and other information)*

EDC a Virginia Corporation
1660 Huguenot Road
Midlothian, VA 23113

for the following Project:
*(Name, location and detailed description)*

Movie Tavern
Township 5- Phase Two
Town of Camillus
Onondaga Co., New York

The Architect:
(Name, legal status, address and other information)

JKR Partners, LLC
100 East Penn Square, Suite 1080
Philadelphia, PA 19107

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

Init.
/

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:43:28 on 08/27/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
**User Notes:**



(1332300850)

The Owner and Contractor agree as follows.

TABLE OF ARTICLES


1 THE CONTRACT DOCUMENTS

2 THE WORK OF THIS CONTRACT

3 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

4 CONTRACT SUM

5 PAYMENTS

6 DISPUTE RESOLUTION

7 TERMINATION OR SUSPENSION

8 MISCELLANEOUS PROVISIONS

9 ENUMERATION OF CONTRACT DOCUMENTS

10 INSURANCE AND BONDS


## ARTICLE 1 THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions) as amended and attached hereto, Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than a Modification, appears in Article 9.

## ARTICLE 2 THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described except as specifically indicated in the Contract Documents to be the responsibility of others and as specifically itemized in Contractor's Proposal, including Clarifications and Exclusions revised 8-26-15, Exhibit A attached.

## ARTICLE 3 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 3.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

If, prior to the commencement of the Work, the Owner requires time to file mortgages and other security interests, the Owner's time requirement shall be as follows:

Not applicable.

§ 3.2 The Contract Time shall be measured from the date of commencement.



AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:43:28 on 08/27/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. If appropriate, insert requirements for earlier Substantial Completion of certain portions of the Work.)*

Contractor shall achieve Substantial Completion on May 6, 2016 provided all permits have been received and a fully executed Contract has been received by EDC on or before August 28, 2015. The date for Substantial Completion shall be extended for each day after August 28, 2015 that either the permits or the executed contract have not been received.

| Portion of Work | Substantial Completion Date |
|---|---|

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time or for bonus payments for early completion of the Work.)*

## ARTICLE 4 CONTRACT SUM

§ 4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be Eight Million Two Hundred Sixty Four Thousand Seventy Five dollars ($8,264,075.00), subject to additions and deductions as provided in the Contract Documents and as approved by Lessee.

§ 4.2 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner: none
*(State the numbers or other identification of accepted alternates. If the bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires.)*

§ 4.3 Unit prices, if any:
*(Identify and state the unit price; state quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($ 0.00) |
|---|---|---|
| As per Exhibit A | | |

§ 4.4 Allowances included in the Contract Sum, if any:
*(Identify allowance and state exclusions, if any, from the allowance price.)*

| Item | Price |
|---|---|
| As per Exhibit A | |

## ARTICLE 5 PAYMENTS

### § 5.1 PROGRESS PAYMENTS

§ 5.1.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ 5.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:



AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:43:28 on 08/27/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

§ 5.1.3 Provided that an Application for Payment is received by the Architect not later than the last day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the last day of the next month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than thirty (30 ) days after the Architect receives the Application for Payment. Notwithstanding anything contained in this Agreement to the contrary, Contractor shall satisfy the following in order to receive each payment:

Each Application for Payment shall be accompanied by a certification by the Architect and Contractor of the percentage of the Work that shall have been completed, and that no liens for labor or materials have been filed, or, if any have been filed, that they have been discharged of record (by payment, bond or order of a court of competent jurisdiction or otherwise). Within twenty (20) days of Contractor's receipt of payment, Contractor shall provide lien waivers from the Contractor and all Subcontractors with contracts in excess of $25,000 for said payment as per Exhibit D.

*(Federal, state or local laws may require payment within a certain period of time.)*

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.1.5 Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

§ 5.1.6 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1 Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of ten percent(10% ). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201™–2007, General Conditions of the Contract for Construction;

.2 Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of ten percent ( 10% );

.3 Subtract the aggregate of previous payments made by the Owner; and

.4 Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

§ 5.1.7 The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

.1 Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
*(Section 9.8.5 of AIA Document A201–2007 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

.2 Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201–2007.

§ 5.1.8 Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

Retainage reduced to five percent (5%) of the Contract Sum upon completion of fifty percent of the Work (as measured by the Contract Sum). Upon Substantial Completion retainage shall be reduced to two and one-half percent



AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:43:28 on 08/27/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

(2 ½%), with Lessee's approval. Said approval shall not be unreasonably withheld. Lessee shall be responsible for the payment to Contractor of all reductions in retainage prior to Final Payment. Any portion of the reduced retainage paid by Lessee shall be reimbursed by Land Owner upon Final Payment.

§ 5.1.9 Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

§ 5.2 FINAL PAYMENT
§ 5.2.1 Final payment, constituting the entire unpaid balance (including all retainage) of the Contract Sum, shall be made by the Owner to the Contractor when

.1 the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if any, which extend beyond final payment; and
.2 a final Certificate for Payment has been issued by the Architect.

§ 5.2.2 The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment.

ARTICLE 6 DISPUTE RESOLUTION
§ 6.1 INITIAL DECISION MAKER
The Architect will serve as Initial Decision Maker pursuant to Section 15.2 of AIA Document A201–2007, unless the parties appoint below another individual, not a party to this Agreement, to serve as Initial Decision Maker.
*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*

§ 6.2 BINDING DISPUTE RESOLUTION
For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201–2007, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

[ X ] Arbitration pursuant to Section 15.4 of AIA Document A201–2007

[ ] Litigation in a court of competent jurisdiction. Both the Owner and the Contractor waive the right to a jury trial.

[ ] Other *(Specify)*

ARTICLE 7 TERMINATION OR SUSPENSION
§ 7.1 The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201–2007.

§ 7.2 The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007.

Init.

/

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:43:28 on 08/27/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:



(1332300850)

## ARTICLE 8 MISCELLANEOUS PROVISIONS

§ 8.1 Where reference is made in this Agreement to a provision of AIA Document A201–2007 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

§ 8.2 Payments which are past due following Contractor meeting all of the requirements of this Agreement to be paid, and remain unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

*(Insert rate of interest agreed upon, if any.)*

Eight percent (8% ) per annum

§ 8.3 The Owner's representative:
*(Name, address and other information)*

Jerry Passmore
Movie Tavern Theaters, LLC
12400 Coit Road, Suite 875
Dallas, TX 75251
Phone: 817.341.4720
Mobile: 214.336.3697
Email: jpassmore@movietavern.com

§ 8.4 The Contractor's representative:
*(Name, address and other information)*

Chris Walsh
EDC
1660 Huguenot Road
Midlothian, VA 23113
Phone: 804.897.0900, ext 105
Mobile:804.205.6233
Email: cwalsh@edcweb.com

§ 8.5 Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

§ 8.6 Other provisions:

.1 Notwithstanding anything contained in this Agreement to the contrary, the Land Owner (Hinsdale Group, LLC) hereby agrees that it shall be solely responsible for payment of the Contract Sum and shall directly make all payments therein to Contractor. Contractor hereby agrees to look solely to the Land Owner for payment of the Contract Sum in accordance with the terms of this Agreement. In the event the Contract Sum should become more than $9,300,000.00 the parties hereto agree that Lessee (Movie Tavern Theaters, LLC) shall be responsible to pay for all amounts greater than $9,300,000.00.

.2 In the event that the Contractor achieves Substantial Completion later than forty (40) days after the expiration of the Contract Time, as adjusted in accordance with the Contract Documents, the Contractor shall pay Lessee as liquidated damages an amount equal to $2,675.00 per day for each day later than the forty (40) days late, until Substantial Completion is achieved.

.3 Notwithstanding anything contained in this Agreement to the contrary, Contractor shall be entitled to rely upon Lessee's action only in taking direction when required by Owner hereunder.

.4 Lessee shall have the right to furnish certain materials. Any materials furnished by Lessee shall not be included in the Contract Sum.



AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:43:28 on 08/27/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

.5 Contractor shall obtain builder's risk insurance as required by this Agreement.

.6 Contractor shall not file any liens against the Owner's property in connection with the Agreement without providing Owner 5 days' prior written notice.

.7 Land Owner shall have the right to discharge any liens filed against its property should Contractor not have the liens discharged or bonded over within ten (10) days of Contractor receiving notice of the same. Any such payment made by Land Owner will reduce Land Owner's total commitment of $9,300,000 to be paid towards Contract Sum.

.8 Contractor and Lessee each hereby releases and agrees to indemnify and hold harmless Land Owner for any and all disputes arising out of this Agreement, except to the extent related to payments on the Contract Sum required to be made by Land Owner hereunder. The foregoing shall not be construed to limit or otherwise affect Land Owner's obligations under its lease with Lessee.

## ARTICLE 9 ENUMERATION OF CONTRACT DOCUMENTS

§ 9.1 The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

§ 9.1.1 The Agreement is this executed AIA Document A101–2007, Standard Form of Agreement between Owner and Contractor.

§ 9.1.2 The General Conditions are AIA Document A201–2007, General Conditions of the Contract for Construction as modified and attached to the executed revision of this Agreement, and therefore is a part of this Agreement.

§ 9.1.3 The Supplementary and other Conditions of the Contract:

| Document | Title | Date | Pages |
|---|---|---|---|
| None | | | |

§ 9.1.4 The Specifications:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Date | Pages |
|---|---|---|---|
| As per Exhibit B | | | |

§ 9.1.5 The Drawings:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*
Exhibit A

| Number | Title | Date |
|---|---|---|
| As per Exhibit B | | |

§ 9.1.6 The Addenda, if any:

| Number | Date | Pages |
|---|---|---|
| One | 7-27-15 | 8 |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 9.

§ 9.1.7 Additional documents, if any, forming part of the Contract Documents:

.1 AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

Not applicable

.2 Other documents, if any, listed below:



AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:40:29 on 08/28/2015 under Order No.0923677909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

Exhibit A, Contractor's Proposal, dated 8-06-15 including Clarifications and Exclusions revised 8-26-15, 5 pages, attached
Exhibit B, Plan Log, Addenda, and Specifications, 8 pages, attached
Exhibit C, Contractor's Certificate of Insurance, 1 page, attached
Exhibit D, Lien Waiver, 1 page, attached

ARTICLE 10 INSURANCE AND BONDS
The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201–2007.
*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

| Type of insurance or bond | Limit of liability or bond amount ($ 0.00) |
| --- | --- |
| Limits of Insurance shall be as per Exhibit C | |

This Agreement entered into as of the day and year first written above.

| | |
| --- | --- |
| **LAND OWNER** *(Signature)* | **CONTRACTOR** *(Signature)* |
| Joseph Goethe | |
| | *Christopher M. Johnson, President* |

*(Row deleted)*

**LESSEE** *(Signature)*

Jerry Passmore / Director of Construction



AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:04:07 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes: (1246655569)

EXHIBIT A

Syracuse Movie Tavern
Syracuse, NY

**BID DATE: August 6, 2015**
2:00 PM CENTRAL

*Bid Form:*

*Date:* August 6, 2015 page 1

*From:* EDC

*To:* Movie Tavern, Inc.
12400 Coit Road, #875
Dallas, Texas 75251
*Phone:* (214) 271-4134
*Attn:* Jerry Passmore - Director of Construction
*Email:* jpassmore@movietavern.com
*For:* Syracuse Movie Tavern
Syracuse, NY

The undersigned, having visited the site of the Work and having familiarized himself with the local conditions affecting the cost of his work and with all requirements of the proposed Contract Documents as prepared by the Architect together with the duly issued Addenda to said documents as acknowledged herein, proposes to furnish all things required by said documents and addenda for the Guaranteed Maximum Price (GMP) stated below.

*Financial Statements*
If required by the Owner, the Contractor agrees to immediately submit it's current financial statement.

Changes in the Work
For parts of the Work not included in the Base Bid and not covered by unit pricés, the undersigned agrees to charge for additional work and credit for omitted work as Contractor's Overhead and Profit the following percentages of the cost of said work:

Extra: 5.00% Credit: 5.00%

*Revision Receipt:* *Acknowledgement*

| | | |
|---|---|---|
| ASI-001 | | 07-27-15 |
| Addm #1 | | 07-27-15 |
| | | |

*Question Responses:* *Acknowledgement*

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

## Syracuse Movie Tavern
## Syracuse, NY

**Note: Fill out all line items exactly as indicated. Bid will not be considered if line items are combined with other line items.**

*Bid Form*

*Date:* August 6, 2015 page 2

*From:* EDC

| Division | Description | Value |
|---|---|---|
| 0 | General Conditions | $534,302.00 |
| | Insurance (General Liability & Builders Risk) | $23,500.00 |
| | P&P Bond (If required by Movie Tavern) | See Alternates |
| 2 | Pad Preparation | $228,770.00 |
| | Ramps and Steps | $16,250.00 |
| | Demolition | $0.00 |
| 3 | Concrete | $537,248.00 |
| 4 | Masonry | $807,246.00 |
| 5 | Structural Steel | $793,210.00 |
| | Miscellaneous Metals | $260,575.00 |
| 6 | Rough Carpentry | $65,950.00 |
| | Finish Carpentry (Trim & Cabinets) | $11,875.00 |
| 7 | Building Insulation | In Drywall |
| | Roofing Membrane and Flashing | $280,250.00 |
| | EIFS | $338,600.00 |
| | Other Division 7 | $58,650.00 |
| 8 | Storefront & Glazing | $33,775.00 |
| | Doors & Hardware | $72,600.00 |
| 9 | Drywall | $1,235,285.00 |
| | Paint & Wallcovering (Install of VWC only) | $75,770.00 |
| | Ceramic Tile (Install Only) | $66,450.00 |
| | Floor Carpet & Wall Carpet (Install Only) | $51,250.00 |
| | Resilient: VCT & Rubber Base | $13,840.00 |
| | Ceilings | $146,107.00 |
| | Other Division 9 | $0.00 |
| 10 | Specialties | $38,250.00 |
| 12 | Unloading Owner Furnished Items | $10,000.00 |
| 14 | Elevator | $0.00 |
| 15 | HVAC | $630,840.00 |
| | Plumbing | $332,050.00 |
| | Fire Sprinklers | $87,940.00 |
| 16 | Lighting Receipt & Storage | $290,900.00 |
| | Electrical | $690,070.00 |
| | Fire Alarm System | $96,500.00 |

**Owner's Contingency Allowance:** Include as part of this bid an Owner's Contingency Allowance of 2% of the base bid in the amount of: $162,040.00
**Note:** This Contingency is for the sole exclusive use of the Owner and is not available for the Contractor's use.

**Contractor's Contingency Allowance:** Contractor to include a contingency amount as deemed appropriate by Contractor. This contingency will be for the sole use of the Contractor. in the amount of: $0.00

Profit & Overhead $273,980.00

**Base Bid for All Building Work: $8,264,075.00**

## Syracuse Movie Tavern
## Syracuse, NY

**Note: Fill out all line items exactly as indicated. Bid will not be considered if line items are combined with other line items.**

*Bid Form*

*Date:* August 6, 2015

page 3

*From:* EDC

***Time of Completion:***
If awarded the Contract, the undersigned will complete the work within 240 calendar days from notice to proceed.

A.

Movie Tavern will jointly occupy the building for equipping the theater beginning 75 days prior to the scheduled completion date. As outlined in the following schedule, the Contractor shall schedule the Work so as to meet and allow for the following milestones:

| Item | Target | Weeks from CO |
|---|---|---|
| 1 | Dry-In Date | 20 |
| 2 | OFI (Owner Furnished Items) Delivered to site | 18 |
| 3 | Permanent power: | 10 |
| 4 | Movie Tavern Manager on site: | 10 |
| 5 | Movie Tavern Delivers Projection Equipment: | 6 |
| 6 | Telephone svc. to bldg: | 9 |
| 8 | 1/2 auditoriums complete: | 9 |
| 9 | Phone and Data cable date | 8 |
| 10 | Sign coordination mtg.: | 8 |
| 12 | Console delivery: | 8 |
| 13 | Approx. consoles comp.: | 4 |
| 14 | Movie Tavern Delivers Kitchen & Bar Equip.: | 6 |
| 15 | Walk-In Coolers & Freezers Delivery & Install: | 10 |
| 17 | Drapery Starts: | 7 |
| 18 | Approx. Drapery finish: | 3 |
| 19 | Signage Installs (Exterior) | 5 |
| 20 | Signage Installs (Interior) | 2 |
| 21 | Predrill/Layout seats: | 4 |
| 22 | Balance auditoriums comp.: | 4 |
| 23 | Millwork installs: | 8 |
| 25 | Movie Tavern Seat delivery: | 4 |
| 26 | Approx. seats complete: | 2 |
| 27 | Oil Tanks & Lines/bulk c02: | 2 |
| 28 | Kitchen & Bar equip. installs: | 6 |
| 29 | Drink towers installs: | 2 |
| 30 | Security complete: | 2 |
| 32 | Computer installs: | 2 |
| 33 | Telephones completed: | 1 |

# Syracuse Movie Tavern
# Syracuse, NY

**Note: Fill out all line items exactly as indicated. Bid will not be considered if line items are combined with other line items.**

*Bid Form*

*Date:* August 6, 2015



*From:* EDC

***Bid Guarantee***
The undersigned agrees that the Owner shall have the right to retain this bid for a period of thirty (30) days from the date of receiving bids and guarantee the amount set forth herein to be firm for the same thirty (30) day period.

**Note: Owner reserves the right to review and approve all subcontractor bids.**

***Bid Acceptance***
If written notice of the acceptance of this bid is delivered to the undersigned within the time noted herein, after the date of the opening of the bids, or at any time thereafter before this bid is withdrawn, the undersigned agree that he will execute a construction contract (AIA A102, 2007 edition or later) in accordance with the Bid as accepted, and if required, will furnish contract security in the form of Performance and Payment bonds with such surety or surities as the Owner may approve, the bonds to be paid for by the Owner, all within 10 days (unless a longer period is agreed) from date of such written notice.

It is understood and agreed that the Owner reserves the right to award the contract to his best interest, to reject any or all bids, to waive any information in bidding, and to hold all bids for the bid guarantee period.

*Signed and sealed this* 6th *day of* August, *2015.*

EDC
*Business Name*

1660 Huguenot Road, Midlothian, VA 23113
*Business Address*

804-897-0900 x110
*Telephone*

Jeff Duffy
*By (Printed name of Signator)*

___
*Signature*

Executive Vice President - Preconstruction
*Title*

___
*Attest (if a Corporation)*

*Seal:*

EDC

1660 Huguenot Road
Richmond, Virginia 23113
(804) 897-0900

# Movie Tavern Proposal

**BUILDING:** Township 5 - Phase II
**LOCATION:** Camillus, NY

**REVISION DATE:** 26-Aug-15
**PLANS:** JKR Architects

**CLARIFICATIONS**

1 All exterior signage and logo's to be supplied and installed by the Tenant.
2 We assume there is adequate water supply to accommodate the specified fire sprinkler requirements, hence we exclude the cost to increase any water lines or to provide any supplemental pumps or similar devices.
3 We assume that all on site non organic material is suitable for structural fills, therefore no allowance has been made for the exportation of unsuitable or importation of replacement fill material.
4 This proposal is contingent upon EDC and the owner's ability to negotiate a mutually acceptable contract agreement.
5 Contractor shall not be required to waive lien rights prior to payment.
6 We include all code requirements as shown on drawings. Anything not shown by Architect is excluded.
7 Owner to deliver to EDC a certified building pad at its existing elevation. EDC shall modify the pad per the $60,000 allowance noted below.
8 The Owner shall provide an adequate site entrance and wash down facilities.
9 Owner to furnish a graveled or paved access road to and around the buildings of sufficient capacity to support cranes and other equipment and provide graveled or paved staging area in close proximity to buildings.
10 All work will be performed using open shop (Non Union labor). We do not include any costs related to seperate gates or shut downs due to union contractor picketing.
11 EDC has included (10 days) for weather event delay days in its schedule.
12 See attached schedule for construction durations.
13 We have included electrical secondary wire to the transformer outside the building.
14 This project is quoted without regard to the local tax exempt laws. All savings from tax exempt subs will be returned to the Owner.
15 Our schedule assumes project award week of August 3rd.
16 See attached drawing showing our perimeter curbing and sidewalk scope of work.
17 We include an allowance of $5,000 for landscaping in the sidewalk areas (see below).
18 We include an allowance of $80,000 for winter construction costs and techniques (see below).

**EXCLUSIONS TO CONTRACTOR'S SCOPE OF WORK**

1 All utility connection, tap, meter, and/or other municipal or governmental impact fees.
2 Rock blasting and removal.
3 The costs for special inspections, 3rd party inspections, material testing, soils testing or analysis and quality control testing.
4 Testing, removal, and replacement of rock from site.
5 Winter construction costs and techniques including snow removal and temporary heat, except as per the allowance herein.
6 Testing, removal, and replacement of unsuitable/contaminated materials from site.
7 Site and building permit fees.
8 Emergency Radio Responder Radio System.
9 Brick/concrete pavers.
10 Irrigation and landscaping work except as per the allowance herein.
11 All neon lighting.
12 Auditorium wall drapes.
13 Membrane waterproofing under all hard tile at slab on grade.
14 Requirement for coordination drawings.
15 Fire sprinkler work in exterior canopies, concealed areas and under stadium seating.
16 Relocation or damage to existing utilities 5' from the building slab.

**ALLOWANCES INCLUDED IN PROPOSAL:**

| | | |
|---|---|---|
| 1 | All costs including grading, foundation excavation, compaction, soil import or export, foundation backfill, etc. | $60,000.00 |
| 2 | Winter construction costs and techniques: | $80,000.00 |
| 3 | Landscaping in sidewalk areas: | $5,000.00 |

**UNIT PRICES:**

| | | |
|---|---|---|
| 1 | Cut and haul off unsuitable soils. | $14.00 /CY |
| 2 | Import and place stone. | $35.00 /CY |

**EXHIBIT B**

Plan Log
Move Tavern At Township 5
Onondaga County, Camillus, New York
8/13/2015

| ISSUED | | | |
|---|---|---|---|
| Sheet # | Sheet Title | Original Bid Set | Addendum 1 7/27/2015 |
| | GENERAL | | |
| CSO.1 | COVER - INDEX | 07/09/2015 | 07/27/2015 |
| | | | |
| | SITE | | |
| C5.7 | SITE PLAN - COLORED SIDEWALD AND CURB SCOPE | | |
| | ARCHITECTURAL | | |
| A0.0 | EGRESS PLAN AND CODE CALCULATIONS | 07/09/2015 | |
| A0.1 | RESPONSIBILITY MATRIX | 07/09/2015 | |
| A0.2 | PARTITION TYPES AND NOTES | 07/09/2015 | 07/27/2015 |
| A0.3 | PLAN DETAILS | 07/09/2015 | |
| A1.1 | GROUND FLOOR PLAN | 07/09/2015 | |
| A1.2 | MEZZANINE PLAN | 07/09/2015 | |
| A1.3 | ROOF PLAN | 07/09/2015 | |
| A1.4 | ROOF DETAILS | 07/09/2015 | |
| A2.1 | GROUND FLOOR RCP | 07/09/2015 | |
| A2.2 | MEZZANINE RCP | 07/09/2015 | |
| A3.1 | EXTERIOR ELEVATIONS | 07/09/2015 | 07/27/2015 |
| A3.2 | EXTERIOR ELEVATIONS | 07/09/2015 | 07/27/2015 |
| A4.1 | AUDITORIUM PLANS AND ELEVATIONS | 07/09/2015 | 07/27/2015 |
| A4.2 | AUDITORIUM PLANS AND ELEVATIONS | 07/09/2015 | 07/27/2015 |
| A4.3 | AUDITORIUM PLANS AND ELEVATIONS | 07/09/2015 | 07/27/2015 |
| A4.4 | AUDITORIUM PLANS AND ELEVATIONS | 07/09/2015 | 07/27/2015 |
| A4.5 | AUDITORIUM PLANS AND ELEVATIONS | 07/09/2015 | 07/27/2015 |
| A4.6 | AUDITORIUM PLANS AND ELEVATIONS | 07/09/2015 | 07/27/2015 |
| A5.1 | BUILDING SECTIONS | 07/09/2015 | |
| A6.1 | WALL SECTIONS | 07/09/2015 | |
| A6.2 | WALL SECTIONS | 07/09/2015 | |
| A6.3 | WALL SECTIONS | 07/09/2015 | |
| A6.4 | ENLARGED P.O.S. PLANS AND DETAILS | 07/09/2015 | |
| A6.5 | WALL SECTIONS AND DETAILS | 07/09/2015 | |
| A6.6 | WALL SECTIONS AND DETAILS | 07/09/2015 | |
| A6.7 | AUDITORIUM & PROJECTOR PORT DETAILS | 07/09/2015 | |
| A7.1 | DINING/BAR AND LOBBY PLANS AND ELEVATIONS | 07/09/2015 | |
| A7.2 | PROMENADE ELEVATIONS | 07/09/2015 | |
| A8.1 | TOILET ROOM PLANS & ELEVATIONS | 07/09/2015 | |
| A9.1 | STAIR PLANS, ELEVATIONS & DETAILS | 07/09/2015 | |
| A10.1 | DOOR SCHEDULE AND DETAILS | 07/09/2015 | |
| A11.1 | FINISH SCHEDULE | 07/09/2015 | |
| A11.2 | FINISH SCHEDULE | 07/09/2015 | 07/27/2015 |
| A11.3 | GROUND LEVEL - FINISH FLOOR PLAN | 07/09/2015 | |
| A11.4 | MEZZANINE LEVEL -FINISH FLOOR PLAN | 07/09/2015 | |
| | STRUCTURAL | | |
| S-001 | GENERAL NOTES | 07/01/2015 | |
| S-002 | GENERAL NOTES | 07/01/2015 | |
| S-003 | STRUCTURAL DESIGN CRITERIA | 07/01/2015 | |
| S-101 | FOUNDATION PLAN | 07/01/2015 | 07/27/2015 |
| S-101A | GROUND FLOOR SLAB JOINT PLAN | 07/01/2015 | |
| S-102 | MEZZANINE AND MARQUE ROOF FRAMING PLAN | 07/01/2015 | |
| S-103 | ROOF FRAMING PLANS | 07/01/2015 | |

Plan Log
Move Tavern At Township 5
Onondaga County, Camillus, New York
8/13/2015

| ISSUED: | | | |
|---|---|---|---|
| Sheet # | Sheet Title | Original Bid Set | Addendum 1 7/27/2015 |
| S-104 | PARTIAL FRAMING PLANS | 07/01/2015 | |
| S-200 | BRACE FRAME ELEVATION | 07/01/2015 | |
| S-300 | SCHEDULES AND FOUNDATION DETAILS | 07/01/2015 | |
| S-301 | SECTIONS AND DETAILS | 07/01/2015 | |
| S-302 | SECTIONS AND DETAILS | 07/01/2015 | |
| S-303 | SECTIONS AND DETAILS | 07/01/2015 | |
| S-400 | TYPICAL DETAILS | 07/01/2015 | 07/27/2015 |
| S-401 | TYPICAL DETAILS | 07/01/2015 | |
| S-402 | TYPICAL DETAILS | 07/01/2015 | |
| S-403 | TYPICAL DETAILS | 07/01/2015 | |
| S-404 | TOPPING SLAB TYPICAL DETAILS | 07/01/2015 | 07/27/2015 |
| S-405 | TYPICAL DETAILS | 07/01/2015 | |
| | MEP | | |
| MEP0.1 | SYMBOLS, NOTES, DETAILS, AND MATRIX OF RESPONSIBILITY | 07/01/2015 | 07/27/2015 |
| MEP0.2 | ENERGY COMPLIANCE FORMS | 07/01/2015 | |
| MEP0.3 | ENERGY COMPLIANCE FORMS | 07/01/2015 | |
| MEP0.4 | MEP EXHAUST HOOD DIAGRAMS AND DETAILS | 07/01/2015 | |
| MEP1.1 | MEP ROOF PLAN | 07/01/2015 | |
| MEP1.2 | MEP ROOF DETAILS | 07/01/2015 | |
| MEP1.3 | MEP ROOF DETAILS | 07/01/2015 | |
| | MECHANICAL | | |
| M2.1 | LOWER LEVEL FLOOR PLAN - MECHANICAL | 07/01/2015 | |
| M2.2 | FLOOR PLAN - MECHANICAL | 07/01/2015 | |
| M3.1 | MECHANICAL SCHEDULES AND DETAILS | 07/01/2015 | |
| M4.1 | MECHANICAL DETAILS | 07/01/2015 | |
| | PLUMBING | | |
| P2.1 | LOWER LEVEL FLOOR PLAN - PLUMBING | 07/01/2015 | |
| P2.2 | UPPER LEVEL FLOOR PLAN - PLUMBING | 07/01/2015 | |
| P3.1 | KITCHEN PLUMBING PLANS AND DETAILS | 07/01/2015 | 07/27/2015 |
| P3.2 | ENLARGED BAR PLAN AND DETAILS | 07/01/2015 | |
| P3.3 | ENLARGED RESTROOM PLANS AND RISERS | 07/01/2015 | |
| P4.1 | PLUMBING SCHEDULES AND CALCULATIONS | 07/01/2015 | |
| P5.1 | GAS RISER DIAGRAM | 07/01/2015 | |
| | ELECTRICAL | | |
| E2.1 | LOWER LEVEL FLOOR PLAN - LIGHTING | 07/01/2015 | |
| E2.2 | UPPER LEVEL FLOOR PLAN - LIGHTING | 07/01/2015 | |
| E2.3 | EXTERIOR ELEVATIONS LIGHTING/POWER | 07/01/2015 | |
| E3.1 | LOWER LEVEL FLOOR PLAN - POWER | 07/01/2015 | |
| E3.2 | UPPER LEVEL FLOOR PLAN - POWER | 07/01/2015 | |
| E3.3 | UPPER LEVEL FLOOR PLAN POWER - SEATS | 07/01/2015 | |
| E4.1 | LOWER LEVEL FLOOR PLAN AISLE LIGHTING | 07/01/2015 | |
| E4.2 | UPPER LEVEL FLOOR PLAN STEP + AISLE LIGHTING | 07/01/2015 | |
| E5.1 | ENLARGED PLANS - POWER | 07/01/2015 | 07/27/2015 |
| E5.2 | ENLARGED PLANS - POWER | 07/01/2015 | |
| E5.3 | FIXTURE SCHEDULE | 07/01/2015 | 07/27/2015 |
| E6.1 | PROJECTION + SOUND ELEVATIONS, DETAILS + NOTES | 07/01/2015 | |
| E7.1 | ELECTRICAL ONE-LINE DIAGRAM | 07/01/2015 | |
| E7.2 | PANEL BOARD SCHEDULES | 07/01/2015 | 07/27/2015 |

Plan Log
Move Tavern At Township 5
Onondaga County, Camillus, New York
8/13/2015

| ISSUED | | | |
|---|---|---|---|
| Sheet # | Sheet Title | Original Bid Set | Addendum 7/27/2015 |
| E7.3 | PANEL BOARD SCHEDULES | 07/01/2015 | |
| E8.1 | LOWER LEVEL + PARTIAL UPPER LEVEL FLOOR PLANS - LOW VOLTAGE | 07/01/2015 | 07/27/2015 |
| E8.2 | UPPER LEVEL FLOOR PLAN LOW VOLTAGE | 07/01/2015 | |
| E9.1 | LOWER LEVEL FLOOR PLAN LOW VOLTAGE CCTV | 07/01/2015 | |
| E9.2 | UPPER LEVEL FLOOR PLAN LOW VOLTAGE CCTV | 07/01/2015 | |
| E10.1 | LOWER LEVEL FLOOR PLAN + DETAILS - FIRE ALARM | 07/01/2015 | |
| E10.2 | UPPER LEVEL FLOOR PLAN AND ROOF PLAN - FIRE ALARM | 07/01/2015 | |
| | | | |
| | FOOD SERVICE | | |
| FS0 | OVERALL BUILDING PLAN | 06/27/2015 | |
| FS1 | EQUIPMENT FLOOR PLANS | 06/27/2015 | |
| FS2 | EQUIPMENT DRAIN AND GAS PLAN | 06/27/2015 | |
| FS3 | EQUIPMENT WATER FLOOR PLANS | 06/27/2015 | |
| FS4 | EQUIPMENT ELECTRICAL FLOOR PLANS | 06/27/2015 | |
| FS5 | EQUIPMENT WALL BLOCKING PLAN | 06/27/2015 | |
| FS6 | EQUIPMENT SODA/BEER LINE DEPRESSION PLAN | 06/27/2015 | |
| | | | |
| | SPECS | | |
| | JKR PARTNERS LLC | 07/01/2015 | |

# PROJECT MANUAL

**MOVIE TAVERN AT TOWNSHIP 5**
**ONONDAGA COUNTY**
**CAMILLUS, NEW YORK**

**JULY 2015**




JKR PARTNERS LLC
ARCHITECTS + DESIGNERS

CONTACT SHEET

MOVIE TAVERN AT TOWNSHIP 5
ONONDAGA COUNTY
CAMILLUS, NEW YORK

**Theater Tenant**
Movie Tavern
12400 Coit Road, Suite 875
Dallas, TX 75251

Jerry Passmore
Director of Construction
Phone: 817.341.4720
Email: jpassmore@movietavern.com

Allen Sutherland
Project Manager
Email: asutherland@movietavern.com

**Theater Architect**
JKR Partners, LLC
100 East Penn Square, Suite 1080
Philadelphia, PA 19107
Phone: 215.928.9331

Paul Georges
Associate Managing Principal
Cell: 215.285.3802
Email: pgeorges@jkrpartners.com

Richard Stewart
Associate Principal
Cell: 267.974.4533
Email: rstewart@jkrpartners.com

Marissa McMurtrie
Project Coordinator
Email: mmcmurtrie@jkrpartners.com

**Theater Structural Engineer**
Pennoni Associates, Inc.
One Drexel Plaza
30001 Market Street, Suite 200
Philadelphia, PA 19104
Phone: 215.222.3000

Rich Roberts
Vice President
Cell: 215.275.4667
Email: RRoberts@Pennoni.com

D. Matthew Stuart
Structural Division Manager
Email: MStuart@Pennoni.com

Ross Stuart
Project Engineer
Phone: 215.254.7868
Email: RStuart@Pennoni.com

**Theater MEP Engineer**
EnviroDesign, M&E Systems Engineering
900 Ranch Road 620 South, Suite C101-301
Austin, TX 78734
Phone: 512.693.9015

Sam Patton
Cell: 512.633.5396
Email: SPatton@EnviroDesign.Net

Steve Keeton – Mechanical
Email: SKeeton@EnviroDesign.biz

Gene Grand – Plumbing
Email: GGand@EnviroDesign.biz

Dan Habetler – Electrical
Email: DHabetler@EnviroDesign.biz

TABLE OF CONTENTS

MOVIE TAVERN AT TOWNSHIP 5
ONONDAGA COUNTY
CAMILLUS, NEW YORK

July 2015

Title Sheet
Contact Sheet
Table of Contents
Drawing Sheet Index
Geotechnical Engineering Report prepared by John P. Stopen Engineering, LLP, December 6, 2013

DIVISION 1 - GENERAL REQUIREMENTS

| | | Pages |
|---|---|---|
| 011000 | SUMMARY | 1-5 |
| 012300 | ALTERNATES | 1 |
| 013100 | PROJECT MANAGEMENT AND COORDINATION | 1-10 |
| 013200 | CONSTRUCTION PROGRESS DOCUMENTATION | 1-7 |
| 013233 | PHOTOGRAPHIC DOCUMENTATION | 1-3 |
| 013300 | SUBMITTAL PROCEDURES | 1-8 |
| 014000 | QUALITY REQUIREMENTS | 1-9 |
| 014200 | REFERENCES | 1-16 |
| 016000 | PRODUCT REQUIREMENTS | 1-5 |
| 017300 | EXECUTION | 1-10 |
| 017419 | CONSTRUCTION WASTE MANAGEMENT AND DISPOSAL | 1-2 |
| 017700 | CLOSEOUT PROCEDURES | 1-7 |
| 017823 | OPERATION AND MAINTENANCE DATA | 1-9 |
| 017839 | PROJECT RECORD DOCUMENTS | 1-5 |
| 017900 | DEMONSTRATION AND TRAINING | 1-4 |

DIVISION 3 - CONCRETE

| | | Pages |
|---|---|---|
| 033000 | CAST-IN-PLACE-CONCRETE | 1-22 |

DIVISION 4 – MASONRY

| | | Pages |
|---|---|---|
| 042113 | BRICK MASONRY | 1-15 |
| 042200 | CONCRETE UNIT MASONRY | 1-18 |
| 047313 | CALCIUM SILICATE MANUFACTURED STONE MASONRY | 1-5 |

DIVISION 5 - METALS

| | | Pages |
|---|---|---|
| 051200 | STRUCTURAL STEEL FRAMING | 1-10 |
| 052100 | STEEL JOIST FRAMING | 1-6 |
| 053100 | STEEL DECKING | 1-8 |
| 054000 | COLD-FORMED METAL FRAMING | 1-14 |
| 055000 | METAL FABRICATIONS | 1-13 |
| 055100 | METAL STAIRS | 1-7 |

Table of Contents
Page 2


| | | |
|---|---|---|
| 055213 | PIPE AND TUBE RAILINGS | 1-9 |
| **DIVISION 6 - WOOD AND PLASTICS** | | **Pages** |
| 061000 | ROUGH CARPENTRY | 1-6 |
| 061600 | SHEATHING | 1-7 |
| 062023 | INTERIOR FINISH CARPENTRY | 1-6 |
| 066400 | PLASTIC PANELING | 1-4 |
| **DIVISION 7 - THERMAL AND MOISTURE PROTECTION** | | **Pages** |
| 071416 | COLD FLUID-APPLIED WATERPROOFING | 1-6 |
| 072100 | THERMAL INSULATION | 1-6 |
| 072413 | POLYMER-BASED EXTERIOR INSULATION & FINISH SYSTEM (EIFS) | 1-11 |
| 075323 | ETHYLENE-PROPYLENE-DIENE-MONOMER (EPDM) ROOFING | 1-9 |
| 076200 | SHEET METAL FLASHING AND TRIM | 1-8 |
| 077200 | ROOF ACCESSORIES | 1-4 |
| 079200 | JOINT SEALANTS | 1-7 |
| **DIVISION 8 - DOORS AND WINDOWS** | | **Pages** |
| 081113 | HOLLOW METAL DOORS AND FRAMES | 1-8 |
| 081416 | FLUSH WOOD DOORS | 1-5 |
| 084113 | ALUMINUM-FRAMED ENTRANCES AND STOREFRONTS | 1-14 |
| 087100 | DOOR HARDWARE | 1-12 |
| 088000 | GLAZING | 1-10 |
| 088300 | MIRRORS | 1-4 |
| **DIVISION 9 - FINISHES** | | **Pages** |
| 092216 | NON-STRUCTURAL METAL FRAMING | 1-7 |
| 092400 | CEMENT PLASTERING | 1-7 |
| 092900 | GYPSUM BOARD | 1-8 |
| 093000 | TILING | 1-10 |
| 095123 | ACOUSTICAL TILE CEILINGS | 1-7 |
| 096513 | RESILIENT BASE AND ACCESSORIES | 1-4 |
| 096519 | RESILIENT TILE FLOORING | 1-5 |
| 097200 | WALL COVERINGS | 1-4 |
| 099113 | EXTERIOR PAINTING | 1-7 |
| 099123 | INTERIOR PAINTING | 1-8 |
| **DIVISION 10 - SPECIALTIES** | | **Pages** |
| 102113 | TOILET COMPARTMENTS | 1-6 |
| 102600 | WALL AND DOOR PROTECTION | 1-6 |
| 102800 | TOILET, BATH, AND LAUNDRY ACCESSORIES | 1-5 |
| 104413 | FIRE PROTECTION CABINETS | 1-5 |
| 104416 | FIRE EXTINGUISHERS | 1-3 |

DIVISION 15 – MECHANICAL, HVAC, AND PLUMBING


| | | Pages |
|---|---|---|
| 15000 | MECHANICAL GENERAL CONDITIONS | 1-7 |
| 15034 | HVAC TESTING AND BALANCING | 1-3 |
| 15300 | FIRE PROTECTION | 1-6 |
| 15400 | PLUMBING | 1-9 |
| 15500 | HEATING, VENTILATING AND AIR CONDITIONING | 1-8 |


DIVISION 16 - ELECTRICAL


| | | Pages |
|---|---|---|
| 16000 | GENERAL CONDITIONS FOR ELECTRICAL WORK | 1-9 |
| 16050 | BASIC ELECTRICAL MATERIALS AND METHODS | 1-12 |
| 16400 | AUXILIARY ELECTRICAL SYSTEMS | 1-6 |
| 16600 | NEON DISPLAY LIGHTING | 1-2 |
| 16900 | AUTOMATIC TEMPERATURE CONTROLS SYSTEMS | 1-3 |

EXHIBIT C

Client#: 1000780 35EDC

ACORD™

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY): 1/08/2015

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

PRODUCER
BB&T Insurance Services, Inc.
2108 W. Laburnum Ave Suite 300
PO Box 17370
Richmond, VA 23227

CONTACT NAME:
PHONE (A/C, No, Ext): 804 359-0044 FAX (A/C, No): 8887513010
E-MAIL ADDRESS:

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A : Amerisure Insurance Company | 19488 |
| INSURER B : Amerisure Mutual Insurance Co. | 23396 |
| INSURER C : Travelers Property Casualty Ins | 36161 |
| INSURER D : | |
| INSURER E : | |
| INSURER F : | |

INSURED
EDC
Ellerson Development Corporation DBA
1660 Huguenot Road
Midlothian, VA 23113

COVERAGES CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY<br>X COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE X OCCUR<br>X PD Ded:5,000<br>GEN'L AGGREGATE LIMIT APPLIES PER: POLICY X PRO-JECT X LOC | | | CPP207373705 | 12/31/2014 | 12/31/2015 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $1,000,000 |
| | | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | | | | | | | | $ |
| A | AUTOMOBILE LIABILITY<br>X ANY AUTO<br>ALL OWNED AUTOS / SCHEDULED AUTOS<br>X HIRED AUTOS X NON-OWNED AUTOS | | | CA2073736030 | 12/31/2014 | 12/31/2015 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB X OCCUR<br>EXCESS LIAB CLAIMS-MADE<br>DED X RETENTION $0 | | | CU2073738020 | 12/31/2014 | 12/31/2015 | EACH OCCURRENCE | $10,000,000 |
| | | | | | | | AGGREGATE | $10,000,000 |
| | | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) Y/N: N<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | WC207373902 | 12/31/2014 | 12/31/2015 | X WC STATU-TORY LIMITS OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |
| C | Builders Risk | | | RQT6601309X96 | 12/31/2014 | 12/31/2015 | $10,500,000 Per Loc<br>$15,000,000 Cat Limit<br>$2500 Deductible | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Builders Risk Continued: Flood $500,000 Limit / $25,000 Deductible
Earthquake $500,000 Limit / $25,000 Deductible

CERTIFICATE HOLDER

EDC
DBA Ellerson Development Corp.
1660 Huguenot Road
Midlothian, VA 23113

CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE
Vivian R. Hurst

© 1988-2010 ACORD CORPORATION. All rights reserved.

**EXHIBIT D**

Job Number

Vendor:

## UNCONDITIONAL PROGRESS WAIVER OF LIENS

The undersigned, being a party to the construction of certain improvements being made upon real estate described as:

**PROJECT:** Movie Tavern

**BILLING PERIOD:**

**LOCATION:** Township 5 – Phase Two
Town of Camillus
Onondago Co., New York

**CURRENT AMOUNT DUE:**

**LABOR OR MATERIALS FURNISHED:**

for and in consideration of the hereinabove referenced payment and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby waive, release, and quitclaim all rights to a lien upon the land and improvements above described, as a result of work done and/or materials furnished by the undersigned, any employees, materialmen and sub-subcontractors under the statutes of the state in which the project is located relating to mechanic's liens on the aforementioned property and improvements thereon through the herein above referenced billing period for which this payment is made.

The undersigned warrants that all laborers and sub-subcontractors employed in the performance of the work and all materialmen who have furnished materials and services have been fully paid , that none of such laborers, such sub-subcontractors or such materialmen have asserted a claim against or a lien upon the premises hereinabove described, that no chattel mortgage, conditional bill of sale, or retention of title agreement has been executed or given with respect to any item of property used in conjunction with or incorporated into the improvements on the premises hereinabove described, that no claim has been assigned or will be assigned for payment or right to perfect a lien against said land and improvements, and that the undersigned is fully authorized and empowered to execute this Waiver of Liens.

The undersigned understands and agrees that the Owner and any lender and any title insurance company is entitled to rely upon this Waiver.

______________________________

By ____________________________

Title ___________________________

STATE OF: __________________)
)
COUNTY OF: _________________) ss.To-wit:
Taken and subscribed before me, the undersigned Notary Public, this _____ day of ____________, _______.
Registration No.____________

____________________________

My Commission Expires: ______________________ Notary Public

ISMO

# AIA® Document A201™ – 2007

## *General Conditions of the Contract for Construction*

for the following PROJECT:
*(Name and location or address)*
Movie Tavern
Township 5 – Phase Two
Town of Camillus
Onondaga Co., New York

THE Lessee and the Land Owner, together herein referred to as OWNER:
*(Name, legal status and address)*
Movie Tavern Theaters, LLC
305 Baronne Street, Suite 900
New Orleans, LA 70112
(Lessee)

Hinsdale Road Group, LLC
c/o The Cameron Group, LLC
6007 Fair Lakes Road, Suite 100
East Syracuse, NY 13057
(Land Owner)

THE ARCHITECT:
*(Name, legal status and address)*
JKR Partners, LLC
100 East Penn Square, Suite 1080
Philadelphia, PA 19107

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

TABLE OF ARTICLES


1 GENERAL PROVISIONS

2 OWNER

3 CONTRACTOR

4 ARCHITECT

5 SUBCONTRACTORS

6 CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7 CHANGES IN THE WORK

8 TIME

9 PAYMENTS AND COMPLETION

10 PROTECTION OF PERSONS AND PROPERTY


Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes: (1796726515)

11 INSURANCE AND BONDS

12 UNCOVERING AND CORRECTION OF WORK

13 MISCELLANEOUS PROVISIONS

14 TERMINATION OR SUSPENSION OF THE CONTRACT

15 CLAIMS AND DISPUTES

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:



(1798726515)

**INDEX**
(Topics and numbers in bold are section headings.)


**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, **12.3**
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
**Access to Work**
**3.16**, 6.2.1, 12.1
Accident Prevention
10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5, 10.2.8, 13.4.2, 13.7, 14.1, 15.2
Addenda
1.1.1, 3.11.1
Additional Costs, Claims for
3.7.4, 3.7.5, 6.1.1, 7.3.7.5, 10.3, 15.1.4
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, **13.5**
Additional Insured
11.1.4
**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, **15.1.5**
**Administration of the Contract**
3.1.3, **4.2**, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
**Allowances**
**3.8**, 7.3.8
All-risk Insurance
11.3.1, 11.3.1.1
**Applications for Payment**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5.1, 9.6.3, 9.7, 9.10, 11.1.3
Approvals
2.1.1, 2.2.2, 2.4, 3.1.3, 3.10.2, 3.12.8, 3.12.9, 3.12.10, 4.2.7, 9.3.2, 13.5.1
**Arbitration**
8.3.1, 11.3.10, 13.1.1, 15.3.2, **15.4**
**ARCHITECT**
**4**
**Architect**, Definition of
**4.1.1**
Architect, Extent of Authority
2.4.1, 3.12.7, 4.1, 4.2, 5.2, 6.3, 7.1.2, 7.3.7, 7.4, 9.2, 9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1, 13.5.1, 13.5.2, 14.2.2, 14.2.4, 15.1.3, 15.2.1
Architect, Limitations of Authority and Responsibility
2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, 7.4, 9.4.2, 9.5.3, 9.6.4, 15.1.3, 15.2
Architect's Additional Services and Expenses
2.4.1, 11.3.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 4.2, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
2.4.1, 3.1.3, 3.5, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, 6.3, 7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4.1, 9.5, 9.8.4, 9.9.1, 13.5.2, 15.2, 15.3
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.5.2
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5, 3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.4.2, 13.5, 15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for Portions of the Work**
**5.2**
**Basic Definitions**
**1.1**
Bidding Requirements
1.1.1, 5.2.1, 11.4.1
Binding Dispute Resolution
9.7, 11.3.9, 11.3.10, 13.1.1, 15.2.5, 15.2.6.1, 15.3.1, 15.3.2, 15.4.1
**Boiler and Machinery Insurance**
**11.3.2**
Bonds, Lien
7.3.7.4, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.7.4, 9.6.7, 9.10.3, 11.3.9, **11.4**
Building Permit
3.7.1




AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

**Capitalization**
**1.3**
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
**Certificates for Payment**
4.2.1, 4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.3
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
**Change Orders**
1.1.1, 2.4.1, 3.4.2, 3.7.4, 3.8.2.3, 3.11.1, 3.12.8, 4.2.8, 5.2.3, 7.1.2, 7.1.3, **7.2**, 7.3.2, 7.3.6, 7.3.9, 7.3.10, 8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.3.1.2, 11.3.4, 11.3.9, 12.1.2, 15.1.3
**Change Orders**, Definition of
**7.2.1**
**CHANGES IN THE WORK**
2.2.1, 3.11, 4.2.8, 7, 7.2.1, 7.3.1, 7.4, 8.3.1, 9.3.1.1, 11.3.9
**Claims**, Definition of
**15.1.1**
**CLAIMS AND DISPUTES**
3.2.4, 6.1.1, 6.3, 7.3.9, 9.3.3, 9.10.4, 10.3.3, **15**, 15.4
Claims and Timely Assertion of Claims
15.4.1
**Claims for Additional Cost**
3.2.4, 3.7.4, 6.1.1, 7.3.9, 10.3.2, **15.1.4**
**Claims for Additional Time**
3.2.4, 3.7.46.1.1, 8.3.2, 10.3.2, **15.1.5**
**Concealed or Unknown Conditions, Claims for**
**3.7.4**
Claims for Damages
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1, 11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Claims Subject to Arbitration
15.3.1, 15.4.1
**Cleaning Up**
**3.15**, 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.3.1, 11.3.6, 11.4.1, 15.1.4
**Commencement of the Work**, Definition of
**8.1.2**
**Communications Facilitating Contract Administration**
3.9.1, **4.2.4**
Completion, Conditions Relating to
3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1, 9.10, 12.2, 13.7, 14.1.2
**COMPLETION, PAYMENTS AND**
**9**
Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 12.2, 13.7
Compliance with Laws
1.6.1, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 10.2.2, 11.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14.1.1, 14.2.1.3, 15.2.8, 15.4.2, 15.4.3
Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.3.1, 13.2, 13.4.2, 15.4.4.2
**Consolidation or Joinder**
**15.4.4**
**CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS**
1.1.4, **6**
**Construction Change Directive**, Definition of
**7.3.1**
**Construction Change Directives**
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.1.1, 7.1.2, 7.1.3, **7.3**, 9.3.1.1
Construction Schedules, Contractor's
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
**Contingent Assignment of Subcontracts**
**5.4**, 14.2.2.2
**Continuing Contract Performance**
**15.1.3**
**Contract**, Definition of
**1.1.2**
**CONTRACT, TERMINATION OR SUSPENSION OF THE**
5.4.1.1, 11.3.9, **14**
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.3.6, 11.4.1
Contract Documents, Copies Furnished and Use of
1.5.2, 2.2.5, 5.3
**Contract Documents**, Definition of
**1.1.1**
**Contract Sum**
3.7.4, 3.8, 5.2.3, 7.2, 7.3, 7.4, **9.1**, 9.4.2, 9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.3.1, 14.2.4, 14.3.2, 15.1.4, 15.2.5
**Contract Sum**, Definition of
**9.1**
Contract Time
3.7.4, 3.7.5, 3.10.2, 5.2.3, 7.2.1.3, 7.3.1, 7.3.5, 7.4, 8.1.1, 8.2.1, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2, 15.1.5.1, 15.2.5
**Contract Time**, Definition of
**8.1.1**
**CONTRACTOR**
**3**
**Contractor**, Definition of
**3.1, 6.1.2**




AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:
(1798726515)

**Contractor's Construction Schedules**
**3.10**, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1
**Contractor's Liability Insurance**
**11.1**
Contractor's Relationship with Separate Contractors and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.3.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2, 11.3.1.2, 11.3.7, 11.3.8
Contractor's Relationship with the Architect
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5, 3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.5, 15.1.2, 15.2.1
Contractor's Representations
3.2.1, 3.2.2, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the Work
3.3.2, 3.18, 5.3.1, 6.1.3, 6.2, 9.5.1, 10.2.8
Contractor's Review of Contract Documents
3.2
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
14.1, 15.1.6
Contractor's Submittals
3.10, 3.11, 3.12.4, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2, 9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.4.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.5, 7.3.7, 8.2, 10, 12, 14, 15.1.3
Contractual Liability Insurance
11.1.1.8, 11.2
Coordination and Correlation
1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.5, 2.2.5, 3.11
Copyrights
1.5, **3.17**
Correction of Work
2.3, 2.4, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, **12.2**
**Correlation and Intent of the Contract Documents**
**1.2**
**Cost**, Definition of
**7.3.7**
Costs
2.4.1, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3, 7.3.3.3, 7.3.7, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6, 11.3, 12.1.2, 12.2.1, 12.2.4, 13.5, 14
**Cutting and Patching**
**3.14**, 6.2.5
Damage to Construction of Owner or Separate Contractors
3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 11.1.1, 11.3, 12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4.1, 11.3.1, 12.2.4
Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1, 11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
**Date of Commencement of the Work**, Definition of
**8.1.2**
**Date of Substantial Completion**, Definition of
**8.1.3**
**Day**, Definition of
**8.1.4**
Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 15.2, 6.3, 7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4, 15.1, 15.2
**Decisions to Withhold Certification**
9.4.1, **9.5**, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance, Rejection and Correction of
2.3.1, 2.4.1, 3.5, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2, 9.9.3, 9.10.4, 12.2.1
Definitions
1.1, 2.1.1, 3.1.1, 3.5, 3.12.1, 3.12.2, 3.12.3, 4.1.1, 15.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1
**Delays and Extensions of Time**
3.2, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, **8.3**, 9.5.1, 9.7, 10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5
Disputes
6.3, 7.3.9, 15.1, 15.2
**Documents and Samples at the Site**
**3.11**
**Drawings**, Definition of
**1.1.5**
Drawings and Specifications, Use and Ownership of
3.11
Effective Date of Insurance
8.2.2, 11.1.2
**Emergencies**
**10.4**, 14.1.1.2, 15.1.4
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1
Equipment, Labor, Materials or
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.8.3, 3.12, 3.13.1, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2

Init.
/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:
(1798726515)

Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3.1, 3.4.1, 3.5, 3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.5, 8.2, 9.5.1, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3.1, 15.1.3
Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, 7.4, 9.5.1, 9.7, 10.3.2, 10.4.1, 14.3, 15.1.5, 15.2.5
**Failure of Payment**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Faulty Work
(See Defective or Nonconforming Work)
**Final Completion and Final Payment**
4.2.1, 4.2.9, 9.8.2, **9.10**, 11.1.2, 11.1.3, 11.3.1, 11.3.5, 12.3.1, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
Fire and Extended Coverage Insurance
11.3.1.1
**GENERAL PROVISIONS**
**1**
**Governing Law**
**13.1**
Guarantees (See Warranty)
**Hazardous Materials**
10.2.4, **10.3**
Identification of Subcontractors and Suppliers
5.2.1
**Indemnification**
3.17, **3.18**, 9.10.2, 10.3.3, 10.3.5, 10.3.6, 11.3.1.2, 11.3.7
**Information and Services Required of the Owner**
2.1.2, **2.2**, 3.2.2, 3.12.4, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4, 15.1.3
**Initial Decision**
**15.2**
**Initial Decision Maker, Definition of**
1.1.8
Initial Decision Maker, Decisions
14.2.2, 14.2.4, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
Initial Decision Maker, Extent of Authority
14.2.2, 14.2.4, 15.1.3, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
**Injury or Damage to Person or Property**
**10.2.8**, 10.4.1
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.5.2
**Instruments of Service**, Definition of
**1.1.7**
Insurance
3.18.1, 6.1.1, 7.3.7, 9.3.2, 9.8.4, 9.9.1, 9.10.2, **11**
**Insurance, Boiler and Machinery**
**11.3.2**
**Insurance, Contractor's Liability**
**11.1**
Insurance, Effective Date of
8.2.2, 11.1.2
**Insurance, Loss of Use**
**11.3.3**
**Insurance, Owner's Liability**
**11.2**
**Insurance, Property**
10.2.5, **11.3**
Insurance, Stored Materials
9.3.2
**INSURANCE AND BONDS**
**11**
Insurance Companies, Consent to Partial Occupancy
9.9.1
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
**Interest**
**13.6**
**Interpretation**
1.2.3, **1.4**, 4.1.1, 5.1, 6.1.2, 15.1.1
Interpretations, Written
4.2.11, 4.2.12, 15.1.4
Judgment on Final Award
15.4.2
**Labor and Materials, Equipment**
1.1.3, 1.1.6, **3.4**, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13.1, 4.1.1, 9.6.4, 9.9.1, 10.2.2, 11.1.1, 11.3, 13.1.1, 13.4, 13.5.1, 13.5.2, 13.6.1, 14, 15.2.8, 15.4
Liens
2.1.2, 9.3.3, 9.10.2, 9.10.4, 15.2.8
Limitations, Statutes of
12.2.5, 13.7, 15.4.1.1
Limitations of Liability
2.3.1, 3.2.2, 3.5, 3.12.10, 3.17, 3.18.1, 4.2.6, 4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 10.2.5, 10.3.3, 11.1.2, 11.2, 11.3.7, 12.2.5, 13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7, 5.2, 5.3.1, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.3.1.5, 11.3.6, 11.3.10, 12.2, 13.5, 13.7, 14, 15
**Loss of Use Insurance**
**11.3.3**
Material Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
**Materials, Hazardous**
10.2.4, **10.3**



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
**User Notes:**

Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.5.1, 3.4.1, 3.5, 3.8.2, 3.8.3, 3.12, 3.13.1, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1, 14.2.1.2
Means, Methods, Techniques, Sequences and Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
2.1.2, 15.2.8
**Mediation**
8.3.1, 10.3.5, 10.3.6, 15.2.1, 15.2.5, 15.2.6, **15.3**, 15.4.1
**Minor Changes in the Work**
1.1.1, 3.12.8, 4.2.8, 7.1, 7.4
**MISCELLANEOUS PROVISIONS**
**13**
**Modifications**, Definition of
**1.1.1**
Modifications to the Contract
1.1.1, 1.1.2, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7, 10.3.2, 11.3.1
**Mutual Responsibility**
**6.2**
**Nonconforming Work, Acceptance of**
9.6.6, 9.9.3, **12.3**
Nonconforming Work, Rejection and Correction of
2.3.1, 2.4.1, 3.5, 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3, 9.10.4, 12.2.1
Notice
2.2.1, 2.3.1, 2.4.1, 3.2.4, 3.3.1, 3.7.2, 3.12.9, 5.2.1, 9.7, 9.10, 10.2.2, 11.1.3, 12.2.2.1, 13.3, 13.5.1, 13.5.2, 14.1, 14.2, 15.2.8, 15.4.1
**Notice, Written**
2.3.1, 2.4.1, 3.3.1, 3.9.2, 3.12.9, 3.12.10, 5.2.1, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.3.6, 12.2.2.1, **13.3**, 14, 15.2.8, 15.4.1
**Notice of Claims**
3.7.4, 10.2.8, **15.1.2**, 15.4
Notice of Testing and Inspections
13.5.1, 13.5.2
Observations, Contractor's
3.2, 3.7.4
Occupancy
2.2.2, 9.6.6, 9.8, 11.3.1.5
Orders, Written
1.1.1, 2.3, 3.9.2, 7, 8.2.2, 11.3.9, 12.1, 12.2.2.1, 13.5.2, 14.3.1
**OWNER**
**2**
**Owner**, Definition of
**2.1.1**
**Owner, Information and Services Required of the**
2.1.2, **2.2**, 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.3, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4, 15.1.3
Owner's Authority
1.5, 2.1.1, 2.3.1, 2.4.1, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2, 4.1.3, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.6.4, 9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.3, 11.3.10, 12.2.2, 12.3.1, 13.2.2, 14.3, 14.4, 15.2.7
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.4
**Owner's Liability Insurance**
**11.2**
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
**Owner's Right to Carry Out the Work**
**2.4**, 14.2.2
**Owner's Right to Clean Up**
**6.3**
**Owner's Right to Perform Construction and to Award Separate Contracts**
**6.1**
**Owner's Right to Stop the Work**
**2.3**
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
**Ownership and Use of Drawings, Specifications and Other Instruments of Service**
1.1.1, 1.1.6, 1.1.7, **1.5**, 2.2.5, 3.2.2, 3.11.1, 3.17, 4.2.12, 5.3.1
**Partial Occupancy or Use**
9.6.6, **9.9**, 11.3.1.5
**Patching, Cutting and**
**3.14**, 6.2.5
Patents
3.17
**Payment, Applications for**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5, 9.6.3, 9.7, 9.8.5, 9.10.1, 14.2.3, 14.2.4, 14.4.3
**Payment, Certificates for**
4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1, 9.10.3, 13.7, 14.1.1.3, 14.2.4
**Payment, Failure of**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Payment, Final
4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 12.3.1, 13.7, 14.2.4, 14.4.3
**Payment Bond, Performance Bond and**
7.3.7.4, 9.6.7, 9.10.3, **11.4**
**Payments, Progress**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
**PAYMENTS AND COMPLETION**
**9**
Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 14.2.1.2
PCB
10.3.1

Init.
/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:



(1798726515)

**Performance Bond and Payment Bond**
7.3.7.4, 9.6.7, 9.10.3, **11.4**
**Permits, Fees, Notices and Compliance with Laws**
2.2.2, **3.7**, 3.13, 7.3.7.4, 10.2.2
**PERSONS AND PROPERTY, PROTECTION OF**
**10**
Polychlorinated Biphenyl
10.3.1
**Product Data**, Definition of
**3.12.2**
**Product Data and Samples, Shop Drawings**
3.11, **3.12**, 4.2.7
**Progress and Completion**
4.2.2, **8.2**, 9.8, 9.9.1, 14.1.4, 15.1.3
**Progress Payments**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
**Project**, Definition of
**1.1.4**
Project Representatives
4.2.10
**Property Insurance**
10.2.5, **11.3**
**PROTECTION OF PERSONS AND PROPERTY**
**10**
Regulations and Laws
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14, 15.2.8, 15.4
Rejection of Work
3.5, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
3.2.1, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.8.2, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.2, 4.2.10, 5.1.1, 5.1.2, 13.2.1
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
**Review of Contract Documents and Field Conditions by Contractor**
**3.2**, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and Samples by Contractor
3.12
**Rights and Remedies**
1.1.2, 2.3, 2.4, 3.5, 3.7.4, 3.15.2, 4.2.6, 5.3, 5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2, 12.2.4, **13.4**, 14, 15.4
**Royalties, Patents and Copyrights**
**3.17**
Rules and Notices for Arbitration
15.4.1
**Safety of Persons and Property**
**10.2**, 10.4
**Safety Precautions and Programs**
3.3.1, 4.2.2, 4.2.7, 5.3.1, **10.1**, 10.2, 10.4
**Samples**, Definition of
**3.12.3**
**Samples, Shop Drawings, Product Data and**
3.11, **3.12**, 4.2.7
**Samples at the Site, Documents and**
**3.11**
**Schedule of Values**
**9.2**, 9.3.1
Schedules, Construction
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 12.1.2
**Shop Drawings**, Definition of
**3.12.1**
**Shop Drawings, Product Data and Samples**
3.11, **3.12**, 4.2.7
**Site, Use of**
**3.13**, 6.1.1, 6.2.1
Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.4.2, 9.10.1, 13.5
Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
**Specifications**, Definition of
**1.1.6**
**Specifications**
1.1.1, **1.1.6**, 1.2.2, 1.5, 3.11, 3.12.10, 3.17, 4.2.14
Statute of Limitations
13.7, 15.4.1.1
Stopping the Work
2.3, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4
**Subcontractor**, Definition of
**5.1.1**
**SUBCONTRACTORS**
**5**
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7
**Subcontractual Relations**
**5.3**, 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 14.1, 14.2.1
Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.7, 9.2, 9.3, 9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
**Subrogation, Waivers of**
6.1.1, **11.3.7**



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

**Substantial Completion**
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, **9.8**, 9.9.1, 9.10.3, 12.2, 13.7
**Substantial Completion**, Definition of
**9.8.1**
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5, 7.3.8
**Sub-subcontractor**, Definition of
**5.1.2**
Subsurface Conditions
3.7.4
**Successors and Assigns**
**13.2**
**Superintendent**
**3.9**, 10.2.6
**Supervision and Construction Procedures**
1.2.2, **3.3**, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.7, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.3
Surety
5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2, 15.2.7
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
**Suspension by the Owner for Convenience**
**14.3**
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
5.4.1.1, 14
**Taxes**
3.6, 3.8.2.1, 7.3.7.4
**Termination by the Contractor**
**14.1**, 15.1.6
**Termination by the Owner for Cause**
5.4.1.1, **14.2**, 15.1.6
**Termination by the Owner for Convenience**
**14.4**
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2
**TERMINATION OR SUSPENSION OF THE CONTRACT**
**14**
**Tests and Inspections**
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 10.3.2, 11.4.1.1, 12.2.1, **13.5**
**TIME**
**8**
**Time, Delays and Extensions of**
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, **8.3**, 9.5.1, 9.7, 10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5
Time Limits
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 12.2, 13.5, 13.7, 14, 15.1.2, 15.4
**Time Limits on Claims**
3.7.4, 10.2.8, **13.7**, 15.1.2
Title to Work
9.3.2, 9.3.3
**Transmission of Data in Digital Form**
**1.6**
**UNCOVERING AND CORRECTION OF WORK**
**12**
**Uncovering of Work**
**12.1**
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 7.3.4
Use of Documents
1.1.1, 1.5, 2.2.5, 3.12.6, 5.3
**Use of Site**
**3.13**, 6.1.1, 6.2.1
**Values, Schedule of**
**9.2**, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
9.10.5, 13.4.2, 15.1.6
Waiver of Claims by the Owner
9.9.3, 9.10.3, 9.10.4, 12.2.2.1, 13.4.2, 14.2.4, 15.1.6
Waiver of Consequential Damages
14.2.4, 15.1.6
Waiver of Liens
9.10.2, 9.10.4
**Waivers of Subrogation**
6.1.1, **11.3.7**
**Warranty**
3.5, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, 13.7
Weather Delays
15.1.5.2
**Work**, Definition of
**1.1.3**
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2, 15.4.4.2
Written Interpretations
4.2.11, 4.2.12
Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 12.2.2, 12.2.4, **13.3**, 14, 15.4.1
Written Orders
1.1.1, 2.3, 3.9, 7, 8.2.2, 12.1, 12.2, 13.5.2, 14.3.1, 15.1.2



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

## ARTICLE 1 GENERAL PROVISIONS

### § 1.1 BASIC DEFINITIONS

#### § 1.1.1 THE CONTRACT DOCUMENTS

The Contract Documents are enumerated in the Agreement between the Owner and Contractor (hereinafter the Agreement) and consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include the advertisement or invitation to bid, Instructions to Bidders, sample forms, other information furnished by the Owner in anticipation of receiving bids or proposals, the Contractor's bid or proposal, or portions of Addenda relating to bidding requirements.

#### § 1.1.2 THE CONTRACT

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

#### § 1.1.3 THE WORK

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

#### § 1.1.4 THE PROJECT

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by separate contractors.

#### § 1.1.5 THE DRAWINGS

The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

#### § 1.1.6 THE SPECIFICATIONS

The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

#### § 1.1.7 INSTRUMENTS OF SERVICE

Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.

#### § 1.1.8 INITIAL DECISION MAKER

The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2 and certify termination of the Agreement under Section 14.2.2.

### § 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS

**§ 1.2.1** The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes: (1798726515)

§ 1.2.2 Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

§ 1.2.3 Unless otherwise stated in the Contract Documents, words that have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

§ 1.3 CAPITALIZATION
Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

§ 1.4 INTERPRETATION
In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

§ 1.5 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE
§ 1.5.1 The Architect, the Architect's consultants,and Lessee shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and will retain all common law, statutory and other reserved rights, including copyrights. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

§ 1.5.2 The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce the Instruments of Service provided to them solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers may not use the Instruments of Service on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants.

§ 1.6 TRANSMISSION OF DATA IN DIGITAL FORM
If the parties intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions, unless otherwise already provided in the Agreement or the Contract Documents.

ARTICLE 2 OWNER
§ 2.1 GENERAL
§ 2.1.1 The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. All notices required by Contractor per this Agreement shall be deemed delivered when given to the Owner's Representative as defined in 8.3. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

§ 2.1.2 The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

§ 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER
§ 2.2.1 Prior to commencement of the Work, the Contractor may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. Thereafter, the Contractor may only request such evidence if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; or (2) a change in the Work materially changes the Contract Sum. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work as applicable, or



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes: (1798726515)

the portion of the Work affected by a material change. After the Owner furnishes the evidence, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

§ 2.2.2 Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, including those required under Section 3.7.1, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

§ 2.2.3 The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

§ 2.2.4 The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's written request for such information or services.

§ 2.2.5 Unless otherwise provided in the Contract Documents, the Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.

### § 2.3 OWNER'S RIGHT TO STOP THE WORK

If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or repeatedly fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity.

### § 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK

If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a ten-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

## ARTICLE 3 CONTRACTOR

### § 3.1 GENERAL

§ 3.1.1 The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized representative.

§ 3.1.2 The Contractor shall perform the Work in accordance with the Contract Documents.

§ 3.1.3 The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons or entities other than the Contractor.

### § 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR

§ 3.2.1 Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

§ 3.2.2 Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Architect any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect may require. It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional, unless otherwise specifically provided in the Contract Documents.

§ 3.2.3 The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require.

§ 3.2.4 If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall make Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.

§ 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES

§ 3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any loss or damage arising solely from those Owner-required means, methods, techniques, sequences or procedures.

§ 3.3.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors.

§ 3.3.3 The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

§ 3.4 LABOR AND MATERIALS

§ 3.4.1 Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

§ 3.4.2 Except in the case of minor changes in the Work authorized by the Architect in accordance with Sections 3.12.8 or 7.4, the Contractor may make substitutions only with the consent of the Lesseer after evaluation by the Architect and in accordance with a Change Order or Construction Change Directive.



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes: (1798726515)

§ 3.4.3 The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work. The Contractor shall not permit employment of unfit persons or persons not properly skilled in tasks assigned to them.

**§ 3.5 WARRANTY**
The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

**§ 3.6 TAXES**
The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

**§ 3.7 PERMITS, FEES, NOTICES AND COMPLIANCE WITH LAWS**
§ 3.7.1 Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract and legally required at the time bids are received or negotiations concluded.

§ 3.7.2 The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to performance of the Work.

§ 3.7.3 If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

§ 3.7.4 **Concealed or Unknown Conditions.** If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article 15.

§ 3.7.5 If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as provided in Article 15.


AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

**§ 3.8 ALLOWANCES**

**§ 3.8.1** The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

**§ 3.8.2** Unless otherwise provided in the Contract Documents,

.1 Allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

.2 Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and

.3 Whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

**§ 3.8.3** Materials and equipment under an allowance shall be selected by the Owner with reasonable promptness.

**§ 3.9 SUPERINTENDENT**

**§ 3.9.1** The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor.

**§ 3.9.2** The Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the name and qualifications of a proposed superintendent. The Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to the proposed superintendent or (2) that the Architect requires additional time to review. Failure of the Architect to reply within the 14 day period shall constitute notice of no reasonable objection.

**§ 3.9.3** The Contractor shall not employ a proposed superintendent to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not change the superintendent without the Owner's consent, which shall not unreasonably be withheld or delayed.

**§ 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES**

**§ 3.10.1** The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**§ 3.10.2** The Contractor shall prepare a submittal schedule, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, and shall submit the schedule(s) for the Architect's approval. The Architect's approval shall not unreasonably be delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect reasonable time to review submittals. If the Contractor fails to submit a submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.

**§ 3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

**§ 3.11 DOCUMENTS AND SAMPLES AT THE SITE**

The Contractor shall maintain at the site for the Owner one copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and one copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work as a record of the Work as constructed.



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

§ 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

§ 3.12.1 Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

§ 3.12.2 Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

§ 3.12.3 Samples are physical examples that illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

§ 3.12.4 Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. Their purpose is to demonstrate the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents for those portions of the Work for which the Contract Documents require submittals. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals that are not required by the Contract Documents may be returned by the Architect without action.

§ 3.12.5 The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors.

§ 3.12.6 By submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents to the Owner and Architect that the Contractor has (1) reviewed and approved them, (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do so and (3) checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

§ 3.12.7 The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

§ 3.12.8 The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

§ 3.12.9 The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice, the Architect's approval of a resubmission shall not apply to such revisions.

§ 3.12.10 The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

completeness of the services, certifications and approvals performed or provided by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance and design criteria specified in the Contract Documents.

**§ 3.13 USE OF SITE**
The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

**§ 3.14 CUTTING AND PATCHING**
**§ 3.14.1** The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly. All areas requiring cutting, fitting and patching shall be restored to the condition existing prior to the cutting, fitting and patching, unless otherwise required by the Contract Documents.

**§ 3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

**§ 3.15 CLEANING UP**
**§ 3.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials from and about the Project.

**§ 3.15.2** If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and Owner shall be entitled to reimbursement from the Contractor.

**§ 3.16 ACCESS TO WORK**
The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

**§ 3.17 ROYALTIES, PATENTS AND COPYRIGHTS**
The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

**§ 3.18 INDEMNIFICATION**
**§ 3.18.1** To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Section 3.18.

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
**User Notes:** (1798726515)

**§ 3.18.2** In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

## ARTICLE 4 ARCHITECT

### § 4.1 GENERAL

**§ 4.1.1** The Owner shall retain an architect lawfully licensed to practice architecture or an entity lawfully practicing architecture in the jurisdiction where the Project is located. That person or entity is identified as the Architect in the Agreement and is referred to throughout the Contract Documents as if singular in number.

**§ 4.1.2** Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

**§ 4.1.3** If the employment of the Architect is terminated, the Owner shall employ a successor architect as to whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the Architect.

### § 4.2 ADMINISTRATION OF THE CONTRACT

**§ 4.2.1** The Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate for Payment. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

**§ 4.2.2** The Architect will visit the site at intervals appropriate to the stage of construction, or as otherwise agreed with the Owner, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine in general if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.

**§ 4.2.3** On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work. The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

**§ 4.2.4 COMMUNICATIONS FACILITATING CONTRACT ADMINISTRATION**
Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

**§ 4.2.5** Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**§ 4.2.6** The Architect has authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:



(1798726515)

**§ 4.2.7** The Architect will review and approve, or take other appropriate action upon, the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**§ 4.2.8** The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Section 7.4. The Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.

**§ 4.2.9** The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue Certificates of Substantial Completion pursuant to Section 9.8; receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor pursuant to Section 9.10; and issue a final Certificate for Payment pursuant to Section 9.10.

**§ 4.2.10** If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

**§ 4.2.11** The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

**§ 4.2.12** Interpretations and decisions of the Architect will be consistent with the intent of, and reasonably inferable from, the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions rendered in good faith.

**§ 4.2.13** The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

**§ 4.2.14** The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.

## ARTICLE 5 SUBCONTRACTORS

### § 5.1 DEFINITIONS

**§ 5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**§ 5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
**User Notes:**

§ 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK
§ 5.2.1 Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to any such proposed person or entity or (2) that the Architect requires additional time for review. Failure of the Owner or Architect to reply within the 14-day period shall constitute notice of no reasonable objection.

§ 5.2.2 The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

§ 5.2.3 If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

§ 5.2.4 The Contractor shall not substitute a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitution.

§ 5.3 SUBCONTRACTUAL RELATIONS
By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

§ 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS
§ 5.4.1 Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner, provided that

- .1 assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements that the Owner accepts by notifying the Subcontractor and Contractor in writing; and
- .2 assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract.

§ 5.4.2 Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

§ 5.4.3 Upon such assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the

Init.
/
AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.

## ARTICLE 6 CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

### § 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS

**§ 6.1.1** The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Article 15.

**§ 6.1.2** When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

**§ 6.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

**§ 6.1.4** Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights that apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

### § 6.2 MUTUAL RESPONSIBILITY

**§ 6.2.1** The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

**§ 6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

**§ 6.2.3** The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

**§ 6.2.4** The Contractor shall promptly remedy damage the Contractor wrongfully causes to completed or partially completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

**§ 6.2.5** The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

### § 6.3 OWNER'S RIGHT TO CLEAN UP

If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.


AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

## ARTICLE 7 CHANGES IN THE WORK

### § 7.1 GENERAL

**§ 7.1.1** Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

**§ 7.1.2** A Change Order shall be based upon agreement among the Lessee , Contractor and Architect; a Construction Change Directive requires agreement by the Lessee and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

**§ 7.1.3** Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

### § 7.2 CHANGE ORDERS

**§ 7.2.1** A Change Order is a written instrument prepared by the Architect and signed by the Lessee, Contractor and Architect stating their agreement upon all of the following:

.1 The change in the Work;
.2 The amount of the adjustment, if any, in the Contract Sum; and
.3 The extent of the adjustment, if any, in the Contract Time.

### § 7.3 CONSTRUCTION CHANGE DIRECTIVES

**§ 7.3.1** A Construction Change Directive is a written order prepared by the Architect and signed by the Lessee and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Lessee may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**§ 7.3.2** A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

**§ 7.3.3** If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

.1 Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;
.2 Unit prices stated in the Contract Documents or subsequently agreed upon;
.3 Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or
.4 As provided in Section 7.3.7.

**§ 7.3.4** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

**§ 7.3.5** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**§ 7.3.6** A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ 7.3.7** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the Architect shall determine the method and the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.7 shall be limited to the following:

.1 Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;
.2 Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;
.3 Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;
.4 Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and
.5 Additional costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.8** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.9** Pending final determination of the total cost of a Construction Change Directive to the Lessee, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment. The Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Architect determines, in the Architect's professional judgment, to be reasonably justified. The Architect's interim determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.

**§ 7.3.10** When the Lessee and Contractor agree with a determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Architect will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.

### § 7.4 MINOR CHANGES IN THE WORK
The Architect has authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes will be effected by written order signed by the Architect and shall be binding on the Owner and Contractor.

## ARTICLE 8 TIME
### § 8.1 DEFINITIONS
**§ 8.1.1** Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

**§ 8.1.2** The date of commencement of the Work is the date established in the Agreement.

**§ 8.1.3** The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

**§ 8.1.4** The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

### § 8.2 PROGRESS AND COMPLETION
**§ 8.2.1** Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

**§ 8.2.2** The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance.

Init.
/
AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

§ 8.2.3 The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

§ 8.3 DELAYS AND EXTENSIONS OF TIME

§ 8.3.1 If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Lessee; or by changes ordered in the Work; or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control; or by delay authorized by the Lessee pending mediation and arbitration; or by other causes that the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

§ 8.3.2 Claims relating to time shall be made in accordance with applicable provisions of Article 15.

§ 8.3.3 This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

ARTICLE 9 PAYMENTS AND COMPLETION

§ 9.1 CONTRACT SUM

The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

§ 9.2 SCHEDULE OF VALUES

Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit to the Architect, before the first Application for Payment, a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 9.3 APPLICATIONS FOR PAYMENT

§ 9.3.1 At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section 9.2, for completed portions of the Work. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and shall reflect retainage if provided for in the Contract Documents.

§ 9.3.1.1 As provided in Section 7.3.9, such applications may include requests for payment on account of changes in the Work that have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

§ 9.3.1.2 Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

§ 9.3.2 Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

§ 9.3.3 The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes: (1798726515)

encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

**§ 9.4 CERTIFICATES FOR PAYMENT**

**§ 9.4.1** The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

**§ 9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified once all requirements of the Agreement as set forth in Section 5.1.3 have been satisfied by Contractor. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**§ 9.5 DECISIONS TO WITHHOLD CERTIFICATION**

**§ 9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of

- .1 defective Work not remedied;
- .2 third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;
- .3 failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;
- .4 reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;
- .5 damage to the Owner or a separate contractor;
- .6 reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or
- .7 repeated failure to carry out the Work in accordance with the Contract Documents.

**§ 9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**§ 9.5.3** If the Architect withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or material or equipment suppliers to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Architect and the Architect will reflect such payment on the next Certificate for Payment.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
**User Notes:**

§ 9.6 PROGRESS PAYMENTS

§ 9.6.1 After the Architect has issued a Certificate for Payment, the Owner shall make payment subject to the terms and provisions of the Agreement in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

§ 9.6.2 The Contractor shall pay each Subcontractor no later than seven days after receipt of payment from the Owner the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

§ 9.6.3 The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

§ 9.6.4 The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and material and equipment suppliers amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact Subcontractors to ascertain whether they have been properly paid. Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor, except as may otherwise be required by law.

§ 9.6.5 Contractor payments to material and equipment suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

§ 9.6.6 A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

§ 9.6.7 Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

§ 9.7 FAILURE OF PAYMENT

If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by binding dispute resolution, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

§ 9.8 SUBSTANTIAL COMPLETION

§ 9.8.1 Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

§ 9.8.2 When the Contractor considers that the Work, or a portion thereof which the Lessee agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

§ 9.8.3 Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall,



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

§ 9.8.4 When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion, shall establish responsibilities of the Lessee and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

§ 9.8.5 The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Land Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

§ 9.9 PARTIAL OCCUPANCY OR USE

§ 9.9.1 The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.3.1.5 and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

§ 9.9.2 Immediately prior to such partial occupancy or use, the Lessee, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

§ 9.9.3 Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

§ 9.10 FINAL COMPLETION AND FINAL PAYMENT

§ 9.10.1 Upon receipt of the Contractor's written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

§ 9.10.2 Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment, (5) if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner and, (6)



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

satisfaction of all the requirements set forth in Section 5.1.3 of the Agreement. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

§ **9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

§ **9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from

- **.1** liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;
- **.2** failure of the Work to comply with the requirements of the Contract Documents; or
- **.3** terms of special warranties required by the Contract Documents.

§ **9.10.5** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10 PROTECTION OF PERSONS AND PROPERTY

### § 10.1 SAFETY PRECAUTIONS AND PROGRAMS

The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

### § 10.2 SAFETY OF PERSONS AND PROPERTY

§ **10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to

- **.1** employees on the Work and other persons who may be affected thereby;
- **.2** the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and
- **.3** other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

§ **10.2.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

§ **10.2.3** The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

§ **10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

§ **10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections


**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

§ **10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

§ **10.2.7** The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

§ **10.2.8 INJURY OR DAMAGE TO PERSON OR PROPERTY**
If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

§ **10.3 HAZARDOUS MATERIALS**
§ **10.3.1** The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials. If the Contractor encounters a hazardous material or substance not addressed in the Contract Documents and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

§ **10.3.2** Upon receipt of the Contractor's written notice, the Lessee shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to cause it to be rendered harmless. Unless otherwise required by the Contract Documents, the Lessee shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Lessee in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Lessee. If either the Contractor or Architect has an objection to a person or entity proposed by the Lessee, the Lessee shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Lessee and Contractor. By Change Order, the Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up.

§ **10.3.3** To the fullest extent permitted by law, the Lessee shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), except to the extent that such damage, loss or expense is due to the fault or negligence of the party seeking indemnity.

§ **10.3.4** The Owner shall not be responsible under this Section 10.3 for materials or substances the Contractor brings to the site unless such materials or substances are required by the Contract Documents. The Lessee shall be responsible for materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.

§ **10.3.5** The Contractor shall indemnify the Owner for the cost and expense the Owner incurs (1) for remediation of a material or substance the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes: (1798726515)

perform its obligations under Section 10.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.

**§ 10.3.6** If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation of a hazardous material or substance, solely existing upon the property prior to commencement of the Project, by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

**§ 10.4 EMERGENCIES**

In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.

## ARTICLE 11 INSURANCE AND BONDS

**§ 11.1 CONTRACTOR'S LIABILITY INSURANCE**

**§ 11.1.1** The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations and completed operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

- .1 Claims under workers' compensation, disability benefit and other similar employee benefit acts that are applicable to the Work to be performed;
- .2 Claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;
- .3 Claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;
- .4 Claims for damages insured by usual personal injury liability coverage;
- .5 Claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;
- .6 Claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;
- .7 Claims for bodily injury or property damage arising out of completed operations; and
- .8 Claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3.18.

**§ 11.1.2** The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from the date of commencement of the Work until the date of final payment and termination of any coverage required to be maintained after final payment, and, with respect to the Contractor's completed operations coverage, until the expiration of the period for correction of Work or for such other period for maintenance of completed operations coverage as specified in the Contract Documents.

**§ 11.1.3** Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work and thereafter upon renewal or replacement of each required policy of insurance. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. An additional certificate evidencing continuation of liability coverage, including coverage for completed operations, shall be submitted with the final Application for Payment as required by Section 9.10.2 and thereafter upon renewal or replacement of such coverage until the expiration of the time required by Section 11.1.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness.

**§ 11.1.4** The Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional

Init.
/
AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:
(1798726515)

insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

**§ 11.2 OWNER'S LIABILITY INSURANCE**
The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

**§ 11.3 PROPERTY INSURANCE**
**§ 11.3.1** Unless otherwise provided, the Contractor shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.3 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

**§ 11.3.1.1** Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

*(Paragraph deleted)*
**§ 11.3.1.2.** The Contractor shall effect insurance that will protect the interests of the Owner, Subcontractors and Sub-subcontractors in the Work.If the Owner is damaged by the failure or neglect of the Contractor to purchase or maintain insurance as described above, without so notifying the Owner in writing, then the Contractor shall bear all reasonable costs properly attributable thereto.

**§ 11.3.1.3** If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

**§ 11.3.1.4** This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

**§ 11.3.1.5** Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

**§ 11.3.2 BOILER AND MACHINERY INSURANCE**
The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

**§ 11.3.3 LOSS OF USE INSURANCE**
The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

*(Paragraph deleted)*
§

Init.
/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
**User Notes:** (1798726515)

**§ 11.3.5** If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

**§ 11.3.6** Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.3. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

**§ 11.3.7 WAIVERS OF SUBROGATION**
The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**§ 11.3.8** A loss insured under the Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.3.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

**§ 11.3.9** If required in writing by a party in interest, the Contractor as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Contractor's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Contractor shall deposit in a separate account proceeds so received, which the Contractor shall distribute in accordance with such agreement as the parties in interest may reach, or as determined in accordance with the method of binding dispute resolution selected in the Agreement between the Owner and Contractor. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

**§ 11.3.10** The Contractor as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Contractor's exercise of this power; if such objection is made, the dispute shall be resolved in the manner selected by the Owner and Contractor as the method of binding dispute resolution in the Agreement. If the Owner and Contractor have selected arbitration as the method of binding dispute resolution, the Contractor as fiduciary shall make settlement with insurers or, in the case of a dispute over distribution of insurance proceeds, in accordance with the directions of the arbitrators.

**§ 11.4 PERFORMANCE BOND AND PAYMENT BOND**
**§ 11.4.1** The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

**§ 11.4.2** Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/26/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes: (1798726515)

ARTICLE 12 UNCOVERING AND CORRECTION OF WORK

§ 12.1 UNCOVERING OF WORK

§ 12.1.1 If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if requested in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

§ 12.1.2 If a portion of the Work has been covered that the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, such costs and the cost of correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

§ 12.2 CORRECTION OF WORK

§ 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION

The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

§ 12.2.2 AFTER SUBSTANTIAL COMPLETION

§ 12.2.2.1 In addition to the Contractor's obligations under Section 3.5, if, within one year or such longer period prescribed by applicable law after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Lessee to do so unless the Lessee has previously given the Contractor a written acceptance of such condition. The Lessee shall give such notice promptly after discovery of the condition. During the one-year period or such longer period prescribed by law for correction of Work, if the Lessee fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Lessee or Architect, the Lessee may correct it in accordance with Section 2.4.

§ 12.2.2.2 The one-year period or such longer period prescribed by law for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

§ 12.2.2.3 The one-year period or such longer period prescribed by law for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

§ 12.2.3 The Contractor shall remove from the site portions of the Work that are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

§ 12.2.4 The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work that is not in accordance with the requirements of the Contract Documents.

§ 12.2.5 Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Contract Documents. Establishment of the one-year period or such longer period prescribed by law for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes: (1798726515)

**§ 12.3 ACCEPTANCE OF NONCONFORMING WORK**
If the Lessee prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Lessee may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

## ARTICLE 13 MISCELLANEOUS PROVISIONS

**§ 13.1 GOVERNING LAW**
The Contract shall be governed by the law of the place where the Project is located except that, if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.

**§ 13.2 SUCCESSORS AND ASSIGNS**
**§ 13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

**§ 13.2.2** The Owner may, without consent of the Contractor, assign the Contract to a lender providing construction financing for the Project, if the lender assumes the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment. The Lessee may assign all of its rights to the Contract to the Land Owner if the Land Owner assumes the Lessee's rights and obligations under the Contract Documents.

**§ 13.3 WRITTEN NOTICE**
Written notice shall be deemed to have been duly served if delivered in person to the individual, to a member of the firm or entity, or to an officer of the corporation for which it was intended; or if delivered at, or sent by registered or certified mail or by courier service providing proof of delivery to, the last business address known to the party giving notice.

**§ 13.4 RIGHTS AND REMEDIES**
**§ 13.4.1** Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

**§ 13.4.2** No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach there under, except as may be specifically agreed in writing.

**§ 13.5 TESTS AND INSPECTIONS**
**§ 13.5.1** Tests, inspections and approvals of portions of the Work shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Lessee, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of (1) tests, inspections or approvals that do not become requirements until after bids are received or negotiations concluded, and (2) tests, inspections or approvals where building codes or applicable laws or regulations prohibit the Owner from delegating their cost to the Contractor.

**§ 13.5.2** If the Architect, Lessee or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

Init.
/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes: (1798726515)

§ 14.2 TERMINATION BY THE OWNER FOR CAUSE

§ 14.2.1 The Lessee may terminate the Contract if the Contractor

.1 repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
.2 fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;
.3 repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; or
.4 otherwise is guilty of substantial breach of a provision of the Contract Documents.

§ 14.2.2 When any of the above reasons exist, the Lessee, upon certification by the Initial Decision Maker that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

.1 Exclude the Contractor from the site and take possession of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;
.2 Accept assignment of subcontracts pursuant to Section 5.4; and
.3 Finish the Work by whatever reasonable method the Lessee may deem expedient. Upon written request of the Contractor, the Lessee shall furnish to the Contractor a detailed accounting of the costs incurred by the Lessee in finishing the Work.

§ 14.2.3 When the Lessee terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

§ 14.2.4 If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Initial Decision Maker, upon application, and this obligation for payment shall survive termination of the Contract.

§ 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE

§ 14.3.1 The Lessee may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Lessee may determine.

§ 14.3.2 The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent

.1 that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or
.2 that an equitable adjustment is made or denied under another provision of the Contract.

§ 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE

§ 14.4.1 The Lessee may, at any time, terminate the Contract for the Lessee's convenience and without cause.

§ 14.4.2 Upon receipt of written notice from the Lessee of such termination for the Lessee's convenience, the Contractor shall

.1 cease operations as directed by the Lessee in the notice;
.2 take actions necessary, or that the Lessee may direct, for the protection and preservation of the Work; and
.3 except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

§ 14.4.3 In case of such termination for the Lessee's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

## ARTICLE 15 CLAIMS AND DISPUTES

### § 15.1 CLAIMS

### § 15.1.1 DEFINITION

A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim.

### § 15.1.2 NOTICE OF CLAIMS

Claims by either the Owner or Contractor must be initiated by written notice to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

### § 15.1.3 CONTINUING CONTRACT PERFORMANCE

Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents. The Architect will prepare Change Orders and issue Certificates for Payment in accordance with the decisions of the Initial Decision Maker.

### § 15.1.4 CLAIMS FOR ADDITIONAL COST

If the Contractor wishes to make a Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.4.

### § 15.1.5 CLAIMS FOR ADDITIONAL TIME

**§ 15.1.5.1** If the Contractor wishes to make a Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.

**§ 15.1.5.2** The Contractor allows a maximum of ten (10) Weather Event Delay Days with the Contract Time. A Weather Event Delay Day is defined as a day when adverse weather conditions do not allow the Contractor to substantially perform critical path activities. For each day past the ten Weather Event Delay Days allowed, the Substantial Completion Date shall be extended on a day to day basis. Notwithstanding the foregoing, Contractor shall use commercially reasonable efforts to proceed with the Work during weather events provided Lessee approves a change in Contract Sum for the cost of the commercially reasonable efforts. Contractor shall notify Lessee within three days when it experiences a Weather Event Delay Day.

### § 15.1.6 CLAIMS FOR CONSEQUENTIAL DAMAGES

The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes

- .1 damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and
- .2 damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.6 shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

### § 15.2 INITIAL DECISION

§ 15.2.1 Claims, excluding those arising under Sections 10.3, 10.4, 11.3.9, and 11.3.10, shall be referred to the Initial Decision Maker for initial decision. The Architect will serve as the Initial Decision Maker, unless otherwise indicated in the Agreement. Except for those Claims excluded by this Section 15.2.1, an initial decision shall be required as a


**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
**User Notes:** (1798726515)

condition precedent to mediation of any Claim arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Initial Decision Maker with no decision having been rendered. Unless the Initial Decision Maker and all affected parties agree, the Initial Decision Maker will not decide disputes between the Contractor and persons or entities other than the Owner.

**§ 15.2.2** The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the Claim.

**§ 15.2.3** In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Initial Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of such persons at the Owner's expense.

**§ 15.2.4** If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.

**§ 15.2.5** The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties and the Architect, if the Architect is not serving as the Initial Decision Maker, of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.

**§ 15.2.6** Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.

**§ 15.2.6.1** Either party may, within 30 days from the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.

**§ 15.2.7** In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

**§ 15.2.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

**§ 15.3 MEDIATION**

**§ 15.3.1** Claims, disputes, or other matters in controversy arising out of or related to the Contract except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution.

**§ 15.3.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:

arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

**§ 15.3.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**§ 15.4 ARBITRATION**

**§ 15.4.1** If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

**§ 15.4.1.1** A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.

**§ 15.4.2** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

**§ 15.4.3** The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**§ 15.4.4 CONSOLIDATION OR JOINDER**

**§ 15.4.4.1** Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) the arbitrations to be consolidated substantially involve common questions of law or fact, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

**§ 15.4.4.2** Either party, at its sole discretion, may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent.

**§ 15.4.4.3** The Owner and Contractor grant to any person or entity made a party to an arbitration conducted under this Section 15.4, whether by joinder or consolidation, the same rights of joinder and consolidation as the Owner and Contractor under this Agreement.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:46:10 on 08/28/2015 under Order No.0923877909_1 which expires on 04/13/2016, and is not for resale.
User Notes:



(1798726515)