UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

EILERSON DEVELOPMENT
CORPORATION, *et al.*,

                        Third-Party Plaintiffs,

    -against-                                    5:19-CV-0285 (LEK/ML)

SELECTIVE INSURANCE GROUP, INC.,

                        Third-Party Defendant.

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

    This is a declaratory judgment action between the insurance companies of a general

contractor and its subcontractor after an accident at a construction site. The general

contractor—Eilerson Development Corporation ("EDC")—and its insurers—Amerisure

Insurance Company and Amerisure Mutual Insurance Company (collectively,

"Amerisure")—brought third-party complaints against Selective Insurance Group, Inc., which

insured the job's subcontractor. See Dkt. Nos. 14 ("Amerisure Complaint"); 15 ("EDC

Complaint").[1]

    Now before the Court are motions for summary judgment filed by Selective and

Amerisure. See Dkt. Nos. 43; ("Selective's Motion"); 43-14 ("Selective's Statement of

Material Facts" or "Selective's SMF"); 43-15 ("Selective's Memorandum of Law"); 44

("Amerisure's Motion"); 44-16 ("Amerisure's Statement of Material Facts" or "Amerisure's

SMF"); 44-17 ("Amerisure's Memorandum of Law"). Selective and Amerisure oppose one

---

[1]    In this Memorandum-Decision and Order, the Court will refer to the Amerisure
Complaint and the EDC Complaint collectively as the "Third-Party Complaints."

another's motions. <u>See</u> Dkt. Nos. 51 ("Selective's Opposition"); 52-1 ("Amerisure's Opposition")[2]. Each filed a reply. <u>See</u> Dkt. Nos. 56 ("Amerisure's Reply"); 57 ("Selective's Reply").

For the reasons discussed below, the Court grants in part and denies in part Selective's Motion and denies Amerisure's Motion in its entirety.

## II.    BACKGROUND

### A.  Factual History

The following facts are undisputed, except where otherwise noted.

#### 1. *The Parties*[3]

Hinsdale Road Group, LLC ("Hinsdale") was a private equity group formed to develop a parcel of real estate in Camillus, New York. <u>See</u> Selective's SMF ¶ 1; Dkt. No. 52 ("Amerisure's Response to Selective's Statement of Material Facts" or "Amerisure's Response to Selective's SMF") ¶ 1.

Cameron Group, LLC ("Cameron") was engaged by Hinsdale to attract and retain tenants for the parcel of land. <u>See</u> Selective's SMF ¶ 3; Amerisure's Response to Selective's SMF ¶ 3.

Movie Tavern Theaters, LLC ("MTT") leased the premises from Hinsdale, which remained the owner of the land. <u>See</u> Selective's SMF ¶ 5; Amerisure's Response to Selective's SMF ¶ 5.

---

[2]  EDC incorporated the arguments raised in Amerisure's Opposition and asked the Court to deny Selective's motion. <u>See</u> Dkt. No. 53 ¶ 3.

[3]  Though Hinsdale, Cameron, MTT, and Laface are no longer parties to this lawsuit, they are introduced herein.

2

EDC is a Virginia general contractor that, on or about August 7, 2015, entered into a contract with Hinsdale and MTT for the construction of the premises. <u>See</u> Amerisure's SMF ¶ 1; Dkt. No. 54 ("Selective's Response to Amerisure's Statement of Material Facts" or "Selective's Response to Amerisure's SMF") ¶ 1; <u>see also</u> Dkt. No. 44-2 (the "Prime Contract").

Amerisure issued a commercial general liability policy to EDC. <u>See</u> Selective's SMF ¶ 63; Amerisure's Response to Selective's SMF ¶ 63; <u>see also</u> Dkt. No. 43-13 (the "Amerisure CGL Policy").

C&D Laface Construction, Inc. ("Laface") is a subcontractor that contracted with EDC to perform the masonry, cast stone, and brick veneer work at the project site. <u>See</u> Selective's SMF ¶ 7; Amerisure's Response to Selective's SMF ¶ 7; <u>see also</u> Dkt. No. 43-11 (the "Subcontract").

Selective issued a commercial general liability policy to Laface. <u>See</u> Selective's SMF ¶ 35; Amerisure's Response to Selective's SMF ¶ 35; <u>see also</u> Dkt. No 43-12 (the "Selective CGL Policy"). Selective also issued an umbrella policy to Laface. <u>See</u> Selective's SMF ¶ 48; Amerisure's Response to Selective's SMF ¶ 48.[4]

### 2. The Incident and Underlying Lawsuit

On November 5, 2015, a Laface employee named Shaun Atkinson was injured when he came into contact with a forklift. <u>See</u> Selective's SMF ¶¶ 8–10; Amerisure's Response to Selective's SMF ¶¶ 8–10. On May 14, 2018, Atkinson and his wife sued EDC, Cameron, MTT,

---

[4]   Rather than file the umbrella policy as a separate exhibit, Selective attached it to the Selective CGL Policy. <u>See</u> Dkt. No. 43-1 ¶ 34. Thus, where the Court refers to the umbrella policy, it cites to the Selective CGL Policy.

3

and MTT's parent company in New York Supreme Court, Onondaga County.[5] See Selective's

SMF ¶ 12; Amerisure's Response to Selective's SMF ¶ 12.

> 3. *The Insurance Claims*

On June 1, 2018, EDC's counsel sent a letter to Laface seeking additional insured

coverage and indemnification from it and Selective. See Selective's SMF ¶ 14; Amerisure's

Response to Selective's SMF ¶ 14; see also Dkt. No. 43-7. By letter dated June 27, 2018,

Selective agreed "to provide additional insured coverage on a primary basis to" EDC in

connection with the Atkinsons' lawsuit. See Selective's SMF ¶ 15; Amerisure's Response to

Selective's SMF ¶ 15; see also Dkt. No. 43-8.

In a July 2, 2018 letter, The Hanover Insurance Group wrote to EDC to demand defense

and indemnification of its insureds, Cameron and Hinsdale, in the Atkinsons' lawsuit. See

generally Dkt. No. 43-9. However, Amerisure rejected the tender on August 3, 2018, citing

New York anti-indemnity law. See generally Dkt. No. 43-10.

## B. Procedural History

Cameron and Hinsdale brought a declaratory judgment action against Amerisure and

EDC in New York Supreme Court, Onondaga County. See Selective's SMF ¶ 20; Amerisure's

Response to Selective's SMF ¶ 20. On February 28, 2019, Amerisure removed the action to

---

[5]   In this Memorandum-Decision and Order, the Court will refer to the Atkinsons'
Onondaga County lawsuit as the "Underlying Lawsuit." The Court takes judicial notice of the
Underlying Lawsuit: Atkinson et al. v. Eilerson Development Corp. et al., No. 004808/2018 (N.Y.
Sup. Ct.). See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir.
1992) ("A court may take judicial notice of a document filed in another court 'not for the truth of
the matters asserted in the other litigation, but rather to establish the fact of such litigation[.]'")
(quoting Kramer v. Time Warner, Inc., 936 F.2d 767, 774 (2d Cir. 1991)); see also 11 MOORE'S
FEDERAL PRACTICE - CIVIL § 56.95 ("Matters subject to judicial notice are properly considered on
a summary judgment motion.").

4

this Court. <u>See</u> Dkt. No. 1. On June 28, 2019, Amerisure and EDC each filed third-party complaints against Selective and Laface. <u>See</u> Third-Party Compls. Amerisure and EDC's claims against Laface were voluntarily discontinued on December 17, 2019. <u>See</u> Selective's SMF ¶ 32; Amerisure's Response to Selective's SMF ¶ 32; <u>see also</u> Dkt. No. 29.

On February 26, 2021, Amerisure and Selective each moved for summary judgment. <u>See</u> Docket.

On March 29, 2021, Cameron and Hinsdale voluntarily dismissed their claims against Amerisure and EDC, leaving only Amerisure and EDC's third-party claims against Selective pending in this suit. <u>See</u> Dkt. No. 50.

## III.     LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>; <u>see also</u> <u>Taggart v. Time, Inc.</u>, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the non-moving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the

basis for the motion and identifying those portions of the record that the moving party claims

will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986). Similarly, the movant is entitled to summary judgment when the

nonmoving party has failed "to establish the existence of an element essential to [the movant's]

case, and on which [the movant] will bear the burden of proof at trial." Id. at 322.

       In attempting to repel a motion for summary judgment after the moving party has met

its initial burden, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all

reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 150 (2000). Hence, "a court's duty in reviewing a motion for summary

judgment is 'carefully limited' to finding genuine disputes of fact, 'not to deciding them.'"

Macera v. Vill. Bd. of Ilion, No. 16-CV-668, 2019 U.S. Dist. LEXIS 169632, at *26 (N.D.N.Y.

Sept. 30, 2019) (Kahn, J.) (quoting Gallo v. Prudential Residential Servs., Ltd.. P'ship, 22 F.3d

1219, 1224 (2d Cir. 1994)).

## IV.   DISCUSSION

       Amerisure seeks a declaration that Cameron, Hinsdale, and MTT are additional insureds

under the Selective CGL Policy, as well as a declaration that the Selective CGL Policy

provides coverage on a primary and non-contributory basis to those entities and EDC. See

Amerisure's Mem. of Law at 22, 26. Selective seeks declarations that: (1) Selective does not

have a duty or obligation to defend or indemnify Cameron, Hinsdale, or MTT under the

Selective CGL Policy or the umbrella policy; (2) the umbrella policy it issued is excess over

6

any and all coverage available to EDC under the Amerisure CGL Policy; and (3) EDC's

coverage under the umbrella policy is limited to $1,000,000, and the Selective and Amerisure

umbrella policies will share ratably any exposure in excess of primary coverage.

See Selective's Mem. of Law at 29–30.

### A. Standing

Selective argues that Amerisure lacks standing to seek a declaration that Cameron,

Hinsdale, and MTT are additional insureds under the Selective CGL Policy. See Selective's

Mem. of Law at 19; Selective's Reply at 5–7.[6] Amerisure responded that it may seek such a

declaration because it is no longer opposing Cameron and Hinsdale in the first-party action and

because New York law permits its claims. See Amerisure's Opp. at 16.[7] The Court agrees that

Amerisure has standing.

### 1. Article III

Under Article III of the United States Constitution, federal courts may not grant

declaratory relief absent an "actual controversy." Maryland Casualty Co. v. Pacific Coal & Oil

Co., 312 U.S. 270, 272 (1941). "Basically, the question in each case is whether the facts

---

[6] Selective did not specify whether it contends Amerisure lacks standing under Article III of the Constitution, under state law, or under both. See Selective's Mem. of Law at 19. Nevertheless, it is clear that Amerisure must have standing under Article III and New York law. See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 173 (2d Cir. 2005) ("Where, as here, jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under Article III of the Constitution and applicable state law in order to maintain a cause of action.").

[7] The Court requested supplemental briefing from Amerisure on the issue of its standing under Article III and state law. See Dkt. No. 59. In Amerisure's brief, it addressed the amount-in-controversy and complete diversity requirements of 28 U.S.C. § 1332, not whether it has Article III standing. See Dkt. No. 60 ("Amerisure's Supplemental Brief") at 2–3.

alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 273. "This limitation is implemented, in part, by the judicially created standing-to-sue doctrine." FCCI Ins. Co. v. Island Pointe, LLC, 309 F. Supp. 3d 399, 404 (D.S.C. 2018). "The standing-to-sue doctrine focuses on '[w]hether a party has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.'" Id. (quoting Sierra Club v. Morton, 405 U.S. 727, 731 (1972)). "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." Thole v. U.S. Bank N.A., 140 S. Ct. 1615, 1618 (2020).

This case is analogous to Island Pointe, where the insurer of a general contractor sued the insurers of its subcontractors for a declaration that the general contractor qualified as an additional insured under policies issued to the subcontractors. See Island Pointe, 399 F. Supp. 3d at 401–02.[8] The court held that the general contractor's insurer had standing to seek additional insured status for the general contractor because the general contractor's insurer "alleged that it continues to spend significant funds defending the lawsuit, the parties disagree about whether [the subcontractors' insurers] have a duty to defend [the general contractor], and the underlying lawsuit is ongoing such that there is 'sufficient immediacy to warrant issuance

---

[8] Whereas in Island Pointe, the general contractor's insurer sought additional insured status for the general contractor, here the general contractor's insurer seeks additional insured status for the owners of the land on which the accident occurred. Compare Island Pointe, 399 F. Supp. 3d at 401–02 with Amerisure's Mem. of Law at 4.

of a declaratory judgment.'" Id. at 405 n.3 (quoting Auto-Owners Ins. Co. v. Travelers Cas. &
Sur. Co. of Am., No. 12-CV-3423, 2014 U.S. Dist. LEXIS 99137, at *12 (D.S.C. July 22,
2014)).

Here, on the other hand, Amerisure has not alleged that it is incurring costs in defending
Cameron, Hinsdale, and MTT in the Underlying Lawsuit. See generally Amerisure Compl.
However, it submitted tender letters sent by the insurance companies for Cameron, Hinsdale,
and MTT, seeking defense and indemnification in the Underlying Lawsuit. See Dkt. Nos. 44-9
(letter from The Hanover Insurance Group, insurer of Cameron and Hinsdale, to EDC, seeking
defense and indemnification from EDC and its insurance carriers); 44-10 (letter from Liberty
Mutual Insurance Company, insurer of MTT, to Amerisure, seeking defense and
indemnification in the Underlying Lawsuit).[9] And, as in Island Pointe, the parties dispute
whether the subcontractor's insurer has a duty to defend third parties—in this case, Cameron,
Hinsdale, and MTT. Finally, the Underlying Lawsuit is ongoing, as was the similar suit in
Island Pointe. The Court thus concludes that Amerisure has standing under Article III.

 2. State Law

As a court in this Circuit recently noted, "New York standing law is no stricter than
Article III." Kofinas v. Fifty-Five Corp., No. 20-CV-7500, 2021 U.S. Dist. LEXIS 28439, at
*11 (S.D.N.Y. Feb. 16, 2021). "Thus, if there is Article III standing, there is also standing

_____

 [9] Amerisure eventually accepted the tenders. See Amerisure's Supp. Br. at 4 ("Pursuant
to the contract between the Owners and the Contractor, Amerisure has accepted the tender of the
Owners to provide a defense and possible indemnification, and now seeks to appropriately transfer
the duties to defend and indemnify to Selective based on the language of the underlying contracts
and the respective policies."). Amerisure asserted that, as of December 31, 2020, it had incurred
$51,500 defending Cameron and Hinsdale in the Underlying Lawsuit. See Amerisure's Mem. of
Law at 16 n.2.

under New York law." Id. Having concluded Amerisure has standing under Article III, the Court determines it may also proceed under state law.

**B. Ripeness**

Neither party has addressed ripeness here, but the Court may raise it sua sponte. See, e.g., Thomas v. City of New York, 143 F.3d 31, 34 (2d Cir. 1998). The Court finds that Amerisure's motion is not ripe insofar as it seeks a declaration that Selective has a duty to indemnify Cameron, Hinsdale, and MTT.

Though the Island Pointe court determined there was standing, it ultimately dismissed on ripeness grounds. See Island Pointe, 309 F. Supp. 3d at 406. Because "[n]o factual findings ha[d] been made in the underlying lawsuit," that court ruled that "a determination of whether any party has a duty to indemnify is not ripe[.]" Id.

The Underlying Lawsuit is now trial ready; however, no factual findings have been made, according to the publicly available docket. See Atkinson, No. 004808/2018 (N.Y. Sup. Ct.). Thus, the issue of whether Selective has a duty to indemnify Cameron, Hinsdale, and MTT is not ripe for review.

**C. Merits**

*1. Whether Cameron, Hinsdale, and MTT are Additional Insureds Under the Selective CGL Policy*

The Court next turns to the merits and holds that Selective does not have a duty or obligation to defend Cameron, Hinsdale, or MTT under the Selective CGL Policy because those entities do not qualify as additional insureds.

"Generally, the courts bear the responsibility of determining the rights or obligations of

10

parties under insurance contracts based on the specific language of the policies." State of New York v. Home Indem. Co., 66 N.Y.2d 669, 671 (1985). "In determining a dispute over insurance coverage, we first look to the language of the policy." Consolidated Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 221 (2002).

Amerisure's argument that Cameron, Hinsdale, and MTT are additional insureds under the Selective CGL Policy rests on Endorsement CG 72 02 12 11 of that policy. That endorsement contains a section titled "Blanket Additional Insureds - As Required By Contract," which provides:

> Subject to the Primary and Non-Contributory provision set forth in this endorsement, **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization whom [Laface has] agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on [Laface's] policy.

Selective CGL Policy at 188.

In turn, the Court considers: (1) whether Laface must have been in privity with Cameron, Hinsdale, and MTT; and (2) whether Laface "agreed in a written contract, written agreement or written permit" to add Cameron, Hinsdale, and MTT as additional insureds on the Selective CGL Policy. The Court answers both questions in the negative.

### a.  Is Privity Required?

Amerisure focuses the Court's attention on the omission of the word "with" from the endorsement. According to Amerisure, Laface need not have been in contractual privity with Cameron, Hinsdale, and MTT because the endorsement requires only that Laface agreed *that* those entities would be additional insureds, not that Laface must have agreed *with* those entities

11

that they would be additional insureds.

To support its position, Amerisure relies on <u>Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Mar. Ins. Co.</u>, 31 N.Y.3d 131 (N.Y. 2018). In <u>Gilbane</u>, the New York Court of Appeals interpreted a policy provision which read: "WHO IS AN INSURED . . . is amended to include as an insured any person or organization *with whom* you have agreed to add as an additional insured by written contract but only with respect to liability arising out of your operations or premises owned by or rented to you." <u>Id.</u> at 135 (emphasis added). The <u>Gilbane</u> court held that, because the parties included the word "with" in the contract, the named insured must have been in contractual privity with the party sought to be covered as an additional insured. <u>Id.</u> at 135–36. In dictum, the Court of Appeals suggested that contractual privity would not be required if the word "with" had not been used. <u>See</u> <u>id.</u> at 135 ("Omitting 'with,' the phrase would read: 'any person or organization whom you have agreed by written contract to add,' and Gilbane JV's position would have merit."); <u>see also</u> <u>115 Kingston Ave. LLC v. Mt. Hawley Ins. Co.</u>, 2019 N.Y. Misc. LEXIS 61 (Sup. Ct. 2019) (holding contractual privity is not required when policy stated that anyone "to whom the Named Insured . . . has agreed by written contract to provide coverage" would be an additional insured).

The Court agrees that the Selective CGL Policy, which omits the word "with," does not require contractual privity between Laface and Cameron, Hinsdale, and MTT. This does not end the analysis, however.

### b. Did Laface Agree to Add Cameron, Hinsdale, and MTT as Additional Insureds on the Selective CGL Policy?

Even though Laface need not have contracted with Cameron, Hinsdale, and MTT for those entities to be additional insureds, there still must be some "written contract, written

agreement or written permit" adding them as additional insureds on the Selective CGL Policy. Amerisure argues that, through the Prime Contract and its incorporation into the Subcontract, Laface entered into a written agreement to add Cameron, Hinsdale, and MTT as additional insureds on the Selective CGL Policy. See Amerisure's Mem. of Law at 21. Because the record is devoid of any promise by Laface to add Cameron, Hinsdale, and MTT as additional insureds, the Court finds that they are not additional insureds under the Selective CGL Policy.

Section 5.3 of Document A201 of the Prime Contract states:

> By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect.

Prime Contract at 43.

The Subcontract between EDC and Laface incorporated the Prime Contract. See Subcontract at 2 (listing the Prime Contract among the "Contract Documents"), 6 (stating that the Subcontract "and the Contract Documents constitute the entire agreement between parties").

In Section 5.3 of Document A201 of the Prime Contract, EDC promised Cameron, Hinsdale, and MTT to require subcontractors to "assume toward [EDC] all the obligations and responsibilities . . . which [EDC], by these Documents, assumes toward" Cameron, Hinsdale, and MTT. In Section 1.9 of the Subcontract, EDC extracted a promise from Laface to "assume toward [EDC] all the obligations and responsibilities that [EDC] assumes toward" Cameron, Hinsdale, and MTT. Subcontract at 3.

Nevertheless, Amerisure is not entitled to the declaration it seeks. First, Amerisure is

13

incorrect that Section 5.3 and its incorporation into the Subcontract "imposed ALL of [the] duties that EDC had to the Owners on C&D Laface and, by extension, to Selective." <u>See</u> Amerisure's Mem. of Law at 21. Rather than passing EDC's obligations to Cameron, Hinsdale, and MTT on to Laface, Section 5.3 of the Prime Contract and Section 1.9 of the Subcontract created new duties that Laface was to owe to EDC—identical duties to the ones EDC owed Cameron, Hinsdale, and MTT under the Prime Contract. <u>See</u> Subcontact at 3 ("The Subcontractor . . . shall assume *toward the Contractor* all the obligations and responsibilities that the Contractor assumes toward the Owner.") (emphasis added). Second, whatever obligations Laface assumed through the incorporation of Section 5.3 of the Prime Contract into the Subcontract, it is clear that Laface did not agree to add Cameron, Hinsdale, and MTT as additional insureds on the Selective CGL Policy. That is the promise with which the Court is concerned because without it, those entities are not covered as additional insureds under the Selective CGL Policy. <u>See</u> <u>Trapani v. 10 Arial Way Assocs.</u>, 301 A.D.2d 644, 647 (N.Y. App. Div. 2nd Dep't 2003) ("A provision in a construction contract cannot be interpreted as requiring the procurement of additional insured coverage unless such a requirement is expressly and specifically stated.").

In sum, because Laface never agreed to add Cameron, Hinsdale, and MTT as additional insureds under the Selective CGL Policy, those entities do not qualify for additional insured status.

> *2. Whether Cameron, Hinsdale, and MTT are Additional Insureds Under the Umbrella Policy*

Amerisure argues that Cameron, Hinsdale, and MTT qualify as additional insureds under the umbrella policy issued by Selective. <u>See</u> Amerisure's Mem. of Law at 26. The Court again disagrees.

Amerisure premises its argument on Section II(A)(5) of the umbrella policy, which states:

"Any additional insured under any policy of 'underlying insurance' will automatically be insured under this insurance." See Amerisure's Opp. at 22 (quoting Selective CGL Policy at 289). Because the Court has determined that Cameron, Hinsdale, and MTT are not additional insureds under the Selective CGL Policy, it finds that they also do not qualify under the umbrella policy.

### 3.   Whether the Umbrella Policy Provides Primary Coverage to EDC

Though the parties dispute whether Cameron, Hinsdale, and MTT are additional insureds under the Selective CGL Policy, they agree that EDC qualifies as an additional insured. See Dkt. No. 43-8 (letter from Selective accepting tender of EDC). They also agree that the Selective CGL Policy provides primary coverage to EDC. See Amerisure's Mem. of Law at 26 ("Therefore, the Selective Policy . . . provides coverage on a primary and non-contributory basis to EDC and must be exhausted before any other policy triggers."); Selective's Reply at 11 ("Thus, by plain application of the 'other insurances' clauses found within the Selective CGL policy and the Amerisure CGL policy, Selective's coverage is primary to EDC.").

However, Selective argues its umbrella policy is excess to the Amerisure CGL Policy, while Amerisure argues the umbrella policy is primary. See Selective's Mem. of Law at 24; Amerisure's Mem. of Law at 26. The Court finds that the umbrella policy is excess to the Amerisure CGL Policy.

"Under New York law, 'to determine the priority of coverage among different policies, a court must review and consider all of the relevant policies at issue.'" Seneca Ins. Co. v. Ill. Nat'l Ins. Co., No. 07-CV-11272, 2009 U.S. Dist. LEXIS 58765, at *8–9 (S.D.N.Y. July 9, 2009) (quoting BP Air Conditioning Corp. v. One Beacon Ins. Group, 8 N.Y.3d 708, 716 (N.Y.

2007)). The analysis "turns on consideration of the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it, as well as upon the wording of its provision concerning excess insurance." State Farm Fire & Cas. Co. v. LiMauro, 65 N.Y.2d 369, 374 (N.Y. 1985).

"Umbrella coverages . . . are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses." 8A APPLEMAN ON INSURANCE, § 4909.85 (1981). Under New York law, "an excess 'other insurance' clause will not render a policy sold as primary insurance . . . excess to a true excess or umbrella policy sold to provide a higher tier of coverage[.]" Sport Rock Intern., Inc. v. Am. Cas. Co., 65 A.D.3d 12, 19 n.5 (N.Y. App. Div. 1st Dep't 2009) (collecting cases).

Here, the Amerisure CGL Policy is primary and therefore cannot, under New York law, be rendered excess to an umbrella policy. See id. But a comparison of the policies' "other insurance" provisions also compels this result. Starting with the text of the Amerisure CGL Policy, it provides that it is excess over "[a]ny other primary insurance available to [EDC] . . . for which [EDC has] been added as an additional insured." Amerisure CGL Policy at 110. But the umbrella policy is clearly excess, not primary. See Selective CGL Policy at 293 (umbrella policy's "other insurance" provision noting that the policy is "excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis").

Amerisure focuses on the Subcontract's requirement that the insurance procured by Laface "shall be primary and non-contributing so that [EDC's] policy will not respond until the limits under [Laface's] policy are exhausted." Amerisure's Mem. of Law at 24 (quoting

16

Subcontract at 4). But this requirement pertained to the commercial general liability insurance that Laface was required to obtain; the Subcontract's umbrella policy requirement contained no similar language. See Subcontract at 4.

In sum, both New York law and the text of the policies support the Court's finding that the umbrella policy is excess to the Amerisure CGL Policy.

### 4. Whether the Selective Umbrella Policy is Capped at $1 Million

Selective seeks a declaration that, under the umbrella policy it issued, EDC's coverage is limited to $1 million. See Selective's Mem. of Law at 26. The Court finds that Selective is not entitled to such a declaration.

To support its argument, Selective relies upon a provision of the umbrella policy, stating: "If coverage provided to the additional insured is required by a contract or agreement, the most [Selective] will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any 'underlying insurance', subject to Section III — Limits of Insurance." Selective CGL Policy at 289. Because the Subcontract required that "Commercial Umbrella Liability shall be provided for at least $1,000,000," see Subcontract at 4, that is the most Selective argues it must pay, see Selective's Mem. of Law at 26. In other words, according to Selective, $1 million is "the amount of insurance required by the contract."[10]

The umbrella policy's additional insured cap only applies "[i]f coverage provided to the

---

[10]   Amerisure correctly notes that $1 million is the minimum required coverage for commercial umbrella liability, not the maximum. See Amerisure's Opp. at 26. But $1 million in coverage is all that the Subcontract required Laface to obtain, see Subcontract at 4; it could have procured more coverage, but nothing required it to do so.

17

additional insured is required by a contract or agreement[.]" Selective CGL Policy at 289. The coverage at issue—the umbrella policy issued by Selective to Laface—*was* "required by a contract": the Subcontract between EDC and Laface. But Selective has not pointed the Court to any contract or agreement requiring coverage to be provided to EDC as an additional insured.

Selective relies upon E.E. Cruz & Co., Inc. v. Axis Surplus Ins. Co., 165 A.D.3d 603 (N.Y. App. Div. 1st Dep't 2018), but that case is distinguishable. There, the subcontract required a party to obtain insurance "naming plaintiff as an additional insured." Id. at 605. Because the additional insured coverage was "required pursuant to contract," the court applied an identically worded cap. Id.

Here, on the other hand, the Subcontract required Laface to obtain umbrella insurance but did not require EDC to be named as an additional insured on the umbrella policy. See Subcontract at 4. Though the Subcontract required EDC to be an additional insured on the commercial general liability policy that Laface needed to obtain, it contained no similar requirement with regard to the umbrella policy. See id.[11]

Because Selective has not shown it is entitled to judgment as a matter of law, the Court denies the portion of its motion seeking a declaration that EDC's coverage under the umbrella policy is capped at $1 million. The Court also refuses to declare that Selective's ratable contribution rate is 1/11 because Selective's proposed formula was based on the coverage cap that the Court declines to impose.

---

[11] The Subcontract provision requiring Laface to obtain umbrella insurance states the policy "shall be as broad as" the commercial general liability insurance. See Subcontract at 4. However, Selective did not argue, and the Court does not conclude, that this meant EDC must be an additional insured on the umbrella policy as it was required to be under the commercial general liability policy.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Amerisure's motion for summary judgment (Dkt. No. 44) is **DENIED in its entirety**; and it is further

**ORDERED**, that Selective's motion for summary judgment (Dkt. No. 43) is **GRANTED in part and DENIED in part**. Selective's motion is granted insofar as it seeks declarations that: (1) Selective does not have a duty or obligation to defend Cameron, Hinsdale, or MTT under the Selective CGL Policy or the umbrella policy; and (2) the umbrella policy issued by Selective is excess over any and all coverage available to EDC under the Amerisure CGL Policy. Selective's motion is otherwise denied; and it is further

**ORDERED**, that the second cause of action contained in the Amerisure Complaint (Dkt. No. 14) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      June 03, 2021
            Albany, New York

Lawrence E. Kahn
U.S. District Judge

19